Argued and submitted November 29, 1995, convictions affirmed; remanded for resentencing June 19, 1996

# STATE OF OREGON,
*Respondent,*

*v.*

# KENNETH SIGMAN,
*Appellant.*

(94-03-6555-C2; CA A85423)

919 P2d 45

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Ann F. Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals his convictions for first-degree burglary and first-degree theft, challenging the trial court's order of restitution. We affirm the convictions and remand for resentencing.

On March 16, 1994, 70-year-old Ben Jacques heard a knock on the door of his motor home. He opened the door and saw a man, Dean Long, standing in front of him. Long said something to Jacques, but Jacques could not hear well and leaned forward to hear Long better. At that point, Long assaulted Jacques, knocking him into a table and onto the floor. Long sat on Jacques' chest and demanded money. Jacques gave Long his wallet containing $300. Long then yelled to someone outside to come in and help, but no one came into the motor home.

Jacques decided to attempt to lure Long into his bedroom, where he kept a gun, so he told Long that there was money in that room. While Long searched the room, Jacques reached for the gun, but Long retrieved it first. Long pointed the gun at Jacques and pulled the trigger, but the gun jammed. Long then dragged Jacques outside, threw him into a ditch and tried again to shoot him. When the gun did not go off, Long hit Jacques on the head with it and knocked him unconscious.

When Jacques regained consciousness, he heard two voices and felt himself being tied up, hands and feet together. Because he kept his eyes shut, Jacques could not tell whether one or two people were tying him up. He later opened his eyes and saw someone other than Long carrying his television out of the motor home. He discovered that his gun also had been taken. When Long and his accomplice left, Jacques freed himself and called 9-1-1.

Two days later, Long was stopped for speeding in Idaho. Defendant was a passenger in the car. The officers who stopped the car noticed that it contained a television set and that there were several credit cards on the passenger side of the car with the name "Ben Jacques" on them. Upon determining that the television had been reported stolen, the

officers arrested Long and defendant. In an interview, defendant admitted that he had driven to Jacques' motor home, but insisted that he stayed in the car while Long went inside. He also admitted that he saw Jacques tied up in the ditch and that he took Jacques' gun.

Defendant was indicted for attempted murder, first-degree burglary, first-degree kidnapping, second-degree robbery, second-degree assault, first-degree theft and second-degree theft. During the trial, the judge considered a defense motion *in limine* that challenged, among other things, evidence seized from Long's car relating to drug use and other burglaries apparently committed in Idaho. The trial court excluded the evidence of the other possible burglaries. After the state rested, the court dismissed all charges except those for first-degree burglary, first-degree theft and second-degree theft. Defendant ultimately was convicted of those charges.

At sentencing, the state requested restitution, including for Jacques' medical expenses resulting from the assault. Defendant objected to the inclusion of medical expenses, because he was not convicted of any charges related to the assault and had not admitted to participating in inflicting any of Jacques' injuries. The trial court imposed restitution, including $590.52 in medical expenses. The court explained that, although all charges related to the assault had been dismissed, it nevertheless had heard evidence that defendant and Long "were involved in a series of burglaries. In essence, [defendant was] involved in a crime spree." Even though defendant perhaps had not participated in the assault of Jacques, he "knew what was coming down. [Defendant] knew why [he was] at that particular man's residence" and that he was "engaged in criminal activity from the word go."

On appeal, defendant challenges the court's imposition of restitution for the $590.52 in medical expenses. He argues that, under ORS 137.106, he may be ordered to make restitution to the victim only when convicted of criminal activities that result in pecuniary damages to the victim. In this case, he was convicted only of burglary and theft, and all of the charges related to the assault of Jacques were dismissed. Because the burglary and theft did not occur until

after Jacques' injuries already had occurred, defendant concludes, he cannot be held responsible for any medical bills that resulted from the assault. The state agrees that there must be a causal connection between a victim's injuries and a crime of which defendant either has been convicted or admits to having committed. It nevertheless argues that the trial court correctly imposed restitution for the victim's medical expenses, because "some evidence" that was not presented to the jury

> "provided strong support for the conclusion that defendant was a willing and knowing participant in all parts of the crimes against the victim."

The state does not identify the evidence to which it refers. It does cite to 77 pages of the transcript that concern defendant's motion to exclude evidence of the other possible burglaries.

We review the trial court's decision for compliance with the requirements of the sentencing law. ORS 138.222(4)(a). Under ORS 137.106, when a defendant "is convicted of criminal activities * * * which have resulted in pecuniary damages," the court may order that the defendant "make restitution to the victim." For the purposes of ORS 137.106, a "victim" is defined as

> "any person whom the court determines has suffered pecuniary damages as a result of the defendant's criminal activities[.]"

ORS 137.103(4). For purposes of that statute, "criminal activities" means any offense with respect to which defendant "is convicted or any other criminal conduct admitted by the defendant." ORS 137.103(1).

■■ In determining whether a defendant has engaged in "criminal activity" that resulted in a victim's pecuniary damage, the trial court may consider any evidence that it ordinarily would at a sentencing hearing. *State v. Dillon*, 292 Or 172, 180-81, 637 P2d 602 (1981). The evidence must show that the pecuniary damage that is the subject of a restitution order was caused by an offense of which the defendant was convicted or to which he or she admitted having committed. *See State v. Hull*, 68 Or App 817, 821, 683 P2d 157, *rev den* 298

Or 37 (1984) ("[a] person may not be ordered to pay restitution for a crime for which he neither was convicted nor admitted committing").

■ The trial court may not, on its own, determine that a defendant *could be* guilty of a crime that resulted in pecuniary damage to a victim. *State v. Thornton*, 103 Or App 296, 298, 796 P2d 1252 (1990), illustrates the point. In that case, the defendant was convicted of theft for stealing cash and tires from the service station where he worked. The trial court ordered restitution that included $275 for a stolen stereo. The defendant had not been charged with stealing a stereo, and he did not admit to stealing one. The state argued that other evidence justified a finding that the defendant had stolen the stereo as well. We rejected the state's argument and reversed, holding that the defendant was convicted only of stealing cash and tires, and that there was no evidence that stealing those items resulted in the loss of a stereo. *Id.*

■ In this case, there was no evidence that any crime of which defendant was convicted, or which he admitted, resulted in Jacques' medical expenses. Defendant was convicted only of burglary and theft, and it is undisputed that those crimes were committed after Jacques was assaulted by Long. The evidence proferred by the state, on which the trial court apparently relied, is irrelevant to the inquiry at issue. That defendant may have been involved in a "crime spree" and may have committed other burglaries in another state does not establish that the physical injuries that Jacques received were a result of a crime of which defendant was convicted or which he admitted having committed. The state points to no other evidence that the crimes of which defendant was convicted resulted in Jacques' medical expenses.

Convictions affirmed; remanded for resentencing.