Argued and submitted March 29, conviction affirmed; remanded for resentencing
May 3, 2000

# STATE OF OREGON,
*Respondent,*

*v.*

# ALVIN HENRY SEGGERMAN,
*Appellant.*

(CF98-0256; CA A102865)

3 P3d 168

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Defendant appeals his conviction for conspiracy to commit theft in the first degree. ORS 164.055[1]; ORS 161.450.[2] He assigns error to the sentencing court's order of restitution. We review for errors of law, ORS 138.222(4)(a),[3] and affirm the conviction but remand for resentencing.

We take the undisputed facts from the record. Defendant managed a convenience store owned by the Bonbright Oil Company (Bonbright). On or about November 19, 1997, defendant agreed with an accomplice, Phillip Boling, that the two would stage a robbery at the store. Defendant stated that he agreed to stage the robbery because, "I was coming up short [on cash in the till] and I couldn't figure out why." He testified that he changed his mind about participating in the robbery before it occurred,

---

[1] ORS 164.055 provides, in part:

"(1) A person commits the crime of theft in the first degree if, by other than extortion, the person commits theft as defined in ORS 164.015 and:

"(a) The total value of the property in a single or aggregate transaction is $200 or more in a case of theft by receiving, and $750 or more in any other case; or

"* * * * *

"(3) Theft in the first degree is a Class C felony."

ORS 164.015 provides, in part:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof[.]"

[2] ORS 161.450 provides, in part:

"(1) A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony or a Class A misdemeanor be performed, the person agrees with one or more persons to engage in or cause the performance of such conduct.

"(2) Criminal conspiracy is a:

"* * * * *

"(c) Class C felony if an object of the conspiracy is commission of a Class C felony."

[3] ORS 138.222 provides, in part:

"(4) In any appeal, the appellate court may review a claim that:

"(a) The sentencing court failed to comply with requirements of law in imposing or failing to impose a sentence[.]"

that he did not in fact participate, and that he did not receive any of the proceeds. He admitted that he did not notify the authorities of his accomplice's plan. Although defendant backed out of the plan, Boling went ahead, and "robbed" the store on November 19. In the ensuing investigation, Bonbright's owners discovered that $6,500 in cigarettes and $4,500 in cash had been missing from the store before the staged robbery but were unable to say how much cash was taken on November 19. The company's insurance carrier paid $5,000 of the loss, leaving defendant's employers with an unrecovered loss of $6,000.

The state charged defendant with theft in the first degree and conspiracy to commit theft in the first degree. The indictment alleged that both offenses occurred "on or about" November 19, 1997. After negotiations, however, the state dismissed the theft charge, and defendant agreed to plead guilty to conspiracy and stipulated to pay $5,000 in restitution to Bonbright's insurance carrier. According to the written plea agreement, defendant and his accomplice agreed "On or about 11/19/97 * * * to commit theft of money, valued at over $1,000 * * *." Defendant did not admit, in the plea agreement or otherwise, that he committed theft of cash or any other property that the staged robbery was intended to conceal.

At sentencing, the state sought an additional $6,000 in restitution for Bonbright. Defendant objected and requested a restitution hearing. Following the hearing, the sentencing court agreed with the state:

"I do make a finding that you are working and are capable of working, to pay restitution. I'm going to order * * * that the total would be $11,000 restitution joint and several with co-defendant [Boling] in this matter. * * *

"* * * * *

"Federated Insurance, $5,000, and [Bonbright] of $6,000."

Defendant appeals from the imposition of restitution in excess of $5,000, the amount to which he stipulated.

ORS 137.106 (1997) defined the trial court's authority to impose restitution at sentencing. That statute provided, in part:

"(1)   When a person is convicted of criminal activities, * * * which have resulted in pecuniary damages, * * * [i]n addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim."

The term 'criminal activities' refers to "any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant." ORS 137.103(1). Defendant argues that, because he neither admitted to nor was convicted of the actual theft, the sentencing court lacked authority to order him to pay restitution beyond the agreed amount. The state responds that defendant did not preserve the argument in the trial court, and that, by entering a guilty plea to the conspiracy charge, defendant conceded that he caused pecuniary damages and waived his right to object to restitution. For the following reasons, we agree with defendant.

■       The state's argument that defendant did not preserve the claimed error is not well taken. At the sentencing and restitution hearing, defendant's attorney argued:

"[The state has] to show under ORS 137.103 a causal relationship between pecuniary damages and the criminal activity. What defendant testified to today was that he was involved in a conspiracy to do this. But he also testified that he did not follow through with that.

"Now it's true he did not go through the necessary steps for renunciation to withdraw from that conspiracy. But he also did not participate in the theft. He did not take this money on that night. He did not take it. It was taken by the co-defendant * * *.

"* * * [T]here is no direct causal relationship here between [defendant's] conspiratorial activity and the actual amount that was taken by someone that he was not even involved with at the time of the theft. So I don't think that [the state] show[s] the causal relationship necessary * * *."

The foregoing argument disclosed both defendant's legal position, as well as the legal authority on which he relied. We conclude that defendant adequately preserved his claim of error. See Davis v. O'Brien, 320 Or 729, 737-38, 891 P2d 1307 (1995) (error preserved where issue squarely presented to

trial court and adverse party had ample opportunity to meet argument).

██ The state also argues that by pleading guilty, defendant "conceded that he caused pecuniary damages." It is true that a defendant can waive the right to object to restitution by so stating in the plea agreement. *State v. Miller*, 116 Or App 432, 435, 841 P2d 678 (1992), *rev den* 315 Or 443 (1993). However, defendant's plea agreement and ensuing guilty plea only admitted the facts necessary to support the material elements of the conspiracy charge; they did not relate facts furnishing a basis for restitution beyond the amount of his stipulation. Therefore, defendant did not waive his right to object to the imposition of a greater sum. *See State v. Kappelman*, 162 Or App 170, 175, 986 P2d 603 (1999) (plea agreement does not implicitly admit facts beyond the essential elements of the charge).

██ The prosecutor argued to the sentencing court that the victim's loss occurred because defendant was "embezzling product and cash." At the restitution hearing, one of the owners of Bonbright testified that $6,500 in cigarettes and $4,500 in cash were taken during the seven-month period preceding the staged robbery. However, defendant was not convicted of the theft of that property. Defendant cannot be required to pay restitution for pecuniary damages arising out of criminal activity for which he was not convicted or which he did not admit having committed. *See State v. Sigman*, 141 Or App 479, 484, 919 P2d 45 (1996) (where defendant was convicted of burglary and theft, but there was no evidence that he participated in codefendant's assault on victim, defendant may not be ordered to pay restitution for victim's medical bills).

The state presented no evidence linking any portion of the victim's loss to defendant's conviction, with the possible exception of the money taken by Boling in the staged robbery. Even as to the latter sum, there was no evidence regarding the amount actually taken. In short, there was no evidence that defendant's crime of conviction—conspiracy to commit the staged robbery—caused any ascertainable amount of pecuniary damage to the victim. Therefore, to the extent that the restitution order exceeded the stipulated amount of $5,000, it was erroneous and the case must be remanded for

resentencing. *State v. Edson*, 329 Or 127, 139, 985 P2d 1253 (1999).

Conviction affirmed; remanded for resentencing.