Argued and submitted May 29, affirmed August 28, 2002

STATE OF OREGON,
*Respondent,*

*v.*

CLYDE STEPHENS,
*Appellant.*

97-10-37847; A111244

52 P3d 1086

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

David F. Coursen, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

DEITS, C. J.

## DEITS, C. J.

A jury convicted defendant of unauthorized use of a vehicle, ORS 164.135(1), and possession of a stolen vehicle, ORS 819.300. The trial court ordered defendant to pay $4,000 in restitution for damage to the vehicle. Defendant seeks reversal of the award of restitution. We affirm.

In August 1997, defendant met a person named "Chuckie" at a mutual friend's house. According to the investigating officer, defendant told her that, because Chuckie needed money for drugs, defendant offered Chuckie $30 to rent his new BMW convertible for a few hours. Defendant used the car for a few hours, but, when he tried to return it, he was unable to find Chuckie at the friend's house. Defendant testified that he thought about calling Rasmussen Motors, because he suspected that the car had come from there. According to one of the investigating officers, defendant told her that he " 'had an idea [the car] was hot.' " Instead of calling Rasmussen, however, he took the car to another location in what he believed to be a safer neighborhood, parked it in the yard of someone he knew, placed a cover over the car, and put the keys in the tailpipe.

Defendant testified that he left word at the mutual friend's house for Chuckie to call him. He did not hear from Chuckie. About three days later, defendant said that he "started feeling [that] something was kind of fishy about this" and went back to check on the car. He testified that the car was fine at that time. When the car eventually was found by the police in September, at the location where defendant had left it, the original tires and wheels were missing. Defendant denies that he took the tires or wheels. However, although defendant disputes this, one of the investigating officers said that defendant told her that he could get the tires and wheels back. Following defendant's conviction, the trial court ordered defendant to pay restitution of $4,000 for damage to the car.

On appeal, defendant assigns error to the trial court's imposition of restitution. Defendant contends that restitution was not properly imposed because the evidence did not establish the required causal connection between

defendant's criminal activities and the pecuniary harm on which the restitution award was based.

ORS 137.106 (1995)[1] defined a court's authority to impose restitution at sentencing and provided, in part:

"When a person is convicted of criminal activities, * * * which have resulted in pecuniary damages, * * * [i]n addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim."[2]

"[T]here are three prerequisites to an order of restitution under ORS 137.106(1): (1) criminal activities, (2) pecuniary damages, and (3) a causal relationship between the two." *State v. Edson*, 329 Or 127, 132, 985 P2d 1253 (1999).

Here, defendant was convicted of criminal activities, and he does not dispute that the car was damaged when the wheels and tires were taken. Thus, the only issue on appeal is whether a causal connection exists between the criminal activities of which defendant was convicted and the damage for which he is being held responsible. Defendant points out that he was convicted only of unauthorized use of a vehicle, ORS 164.135(1),[3] and possession of a stolen vehicle, ORS 819.300.[4] Defendant asserts that he was not charged with the

---

[1] ORS 137.106 (1995) was in effect when defendant committed his crimes. That statute was amended in 1997, Or Laws 1997, ch 313, § 23, and 1999, Or Laws 1999, ch 1051, § 124. We do not understand the parties to assert that those amendments affect the issue on appeal.

[2] The term "criminal activities" refers to "any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant." ORS 137.103(1). Additionally, "pecuniary damages" are

"all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as medical expenses and costs of psychological treatment or counseling."

ORS 137.103(2).

[3] ORS 164.135(1) provides, in part:

"A person commits the crime of unauthorized use of a vehicle when:

"(a) The person takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner[.]"

[4] ORS 819.300(1) provides:

"A person commits the offense of possession of a stolen vehicle if the person possesses any vehicle which the person knows or has reason to believe has been stolen."

theft of the wheels and tires and that he did not admit to taking them. Accordingly, he reasons that there is no causal connection between his criminal activities and the loss of the wheels and tires, which occurred after defendant left the stolen car parked at his friend's house.

Defendant is correct that there must be a causal connection between the criminal activities and the pecuniary damages on which an award of restitution is based. We have not, however, required that the damage must always be the direct result of the defendant's criminal activity. For example, in *State v. Doty*, 60 Or App 297, 653 P2d 276 (1982), the defendant was originally indicted for a burglary in which the victim claimed the loss of guns, jewelry, and silver that had a value of more than $3,000. The defendant eventually pleaded guilty to the theft of guns and jewelry that had a value of less than $200. The trial court imposed $2,000 in restitution, based on the value of a number of stolen items that the defendant denied taking and that were not the basis of the defendant's conviction. It was the defendant's position that someone else must have taken the items in a later burglary.

We upheld the restitution award explaining:

"Defendant does not seriously dispute the loss of the missing items but denies having taken the jewelry himself. However, regardless of whether defendant actually stole the jewelry, the entire loss 'resulted' from his 'criminal activities,' including the admitted kicking in of the victim's door, because it at least created free access to the home for the hypothetical subsequent theft.

"Likewise, the loss of jewelry is an item of 'pecuniary damage,' because defendant could have been found liable in a civil action for the loss resulting from the purported second burglary facilitated by his own negligent conduct in leaving the victim's premises unprotected after his own criminal conduct had ended. *Cf. Mezyk v. National Repossessions, Inc.*, 241 Or 333, 336-37, 405 P2d 840 (1965) (complaint alleging owner's negligence in leaving key in car's ignition facilitating theft held sufficient to withstand demurrer). As set out in Restatement (Second) Torts, § 302b, illustration c, civil liability may be found '[w]here the actor's affirmative act is intended or likely to defeat a protection which the other has placed around his person or

property for the purpose of guarding them from intentional interference. * * *'

"Although defendant was not convicted of and did not admit theft of property over the value of $200, in a civil action arising out of the 'facts or events constituting defendant's criminal activities' he could have been found liable for the entire amount of the victim's loss. We believe that neither the indictment, the facts admitted nor the facts established by the conviction limit the amount of restitution that may be ordered. Rather, if the loss 'resulted,' in a 'but for' sense, from defendant's criminal activities, then the amount of restitution is determined in a separate evidentiary hearing in which the trier of fact determines, as in a civil case, *State v. Dillon,* 292 Or 172, 637 P2d 602 (1981), the money equivalent of the property for the taking or destruction of which the defendant *could* be found civilly liable."

*Doty,* 60 Or App at 300 (omission, emphasis, and bracketed material in original).

In this case, the evidence establishes that the loss of the tires and wheels resulted from defendant's criminal activities of exercising control over, possessing, and using the BMW without the consent of the owner. Specifically, defendant's acts of possession and his exercise of control over the BMW, which included leaving it unprotected in his friend's yard, facilitated the theft. Accordingly, we conclude that the evidence here did establish a causal link between defendant's criminal activity and the damage that occurred.

The cases relied on by defendant, *State v. Grant,* 168 Or App 569, 7 P3d 630 (2000), *State v. Seggerman,* 167 Or App 140, 3 P3d 168 (2000), and *State v. Sigman,* 141 Or App 479, 919 P2d 45 (1996), are distinguishable because, in each of those cases, there simply was *no* evidence that demonstrated a link between the defendant's criminal activities and the damages on which the award of restitution was based. In *Grant,* a "house had been broken into more than once during the three days before defendant was arrested, and property was taken each time." 168 Or App at 571. There was evidence that the value of the property that was stolen during the three-day period was $11,000. The defendant "admitted his responsibility for causing damage to a door and a window

when he broke in and for taking the ball of string, but he argued that there [was] a complete absence of evidence connecting him to the other losses." *Id.* The trial court ordered restitution in the amount of $3,000. We reasoned:

> "In this case, defendant was convicted of a single act of second-degree burglary. The evidence in support of the conviction showed that he broke into the vacant house and stole a ball of string. There is no evidence that defendant broke into the house on any other occasion or that he took any other property or caused any other damage to the house. There is likewise *no evidence that the pecuniary damage that can be linked to the crime of conviction*—the damage to the door and window and the theft of the ball of string—totaled $3,000."

*Id.* at 572 (emphasis added).

In *Seggerman*, the defendant was convicted of conspiracy to commit theft in the first degree. The defendant did not participate in the staged robbery of his employer's store, but his accomplice did. During the ensuing investigation, the defendant's employer discovered that $6,500 in cigarettes and $4,500 in cash had been missing from the store *before* the staged robbery, but it was unable to determine how much cash was taken during that robbery. The trial court ordered the defendant to pay $11,000 in restitution. On appeal, the defendant argued that, because he had not been convicted of the theft and had not admitted to it, the trial court erred in awarding restitution in excess of the $5,000 to which he had stipulated. We agreed with defendant, reasoning that

> "[t]he state presented no evidence linking any portion of the victim's loss to defendant's conviction, with the possible exception of the money taken by [the accomplice] in the staged robbery. Even as to the latter sum, there was no evidence regarding the amount actually taken."

*Seggerman*, 167 Or App at 145 (emphasis added).

Finally, in *Sigman*, the defendant was convicted of first-degree burglary and first-degree theft. At sentencing, the defendant objected to the imposition of restitution for the victim's medical expenses because he was not convicted of any charge that related to the assault of the victim and had not admitted to participating in the infliction of the victim's

injuries. The trial court's restitution award included the victim's medical expenses, and the defendant challenged the award on appeal. We reasoned:

> *"In this case, there was no evidence that any crime of which defendant was convicted, or which he admitted, resulted in [the victim's] medical expenses.* Defendant was convicted only of burglary and theft, and it is undisputed that those crimes were committed *after* [the victim] was assaulted by [another man]. The evidence proffered by the state, on which the trial court apparently relied, is irrelevant to the inquiry at issue. That defendant may have been involved in a 'crime spree' and may have committed other burglaries in another state does not establish that the physical injuries that [the victim] received were a result of a crime of which defendant was convicted or which he admitted having committed. The state points to no other evidence that the crimes of which defendant was convicted resulted in [the victim's] medical expenses."

*Sigman*, 141 Or App at 484 (emphasis added). In contrast, here, defendant's acts of possession and his exercise of control over the BMW, which included leaving it unprotected in his friend's yard, facilitated the theft that followed defendant's criminal conduct. Thus, because there is evidence that the damages *resulted from* defendant's criminal activities, we conclude that the trial court did not err in imposing restitution in this case.

Affirmed.