Submitted September 30, 2014, affirmed January 7, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEPHEN KEITH KIRKLAND,
*Defendant-Appellant.*

Douglas County Circuit Court
12CR2484FE; A153365

342 P3d 163

Peter Gartlan, Chief Defender, and Alice Newlin-Cushing, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

**GARRETT, J.**

After a guilty plea, defendant was convicted of first-degree theft, ORS 164.055. On appeal, defendant challenges the portion of the judgment that ordered him to pay restitution to the victim in the amount of $1,405. Defendant argues that the trial court erred by ordering restitution because the state failed to establish that defendant "admitted" to "other criminal conduct" that caused the victim's damages. ORS 137.106; ORS 137.103(4)(a), (b); ORS 137.103(1). We conclude that defendant pleaded guilty to conduct that the trial court could reasonably find caused $1,405 worth of economic damages to the victim. We, therefore, affirm.

We review the evidence supporting the trial court's restitution order in the light most favorable to the state. *State v. Bullock*, 135 Or App 303, 307, 899 P2d 709 (1995). After stealing jewelry from the victim's dresser, defendant sold an opal necklace to a pawnshop. The victim discovered the necklace at the shop and informed police. The shop owners provided police with the bill of sale, which had defendant's name on it. Defendant was arrested. The necklace and its opal, which defendant had removed from the necklace, were returned to the victim. The victim also reported that she was missing other items of jewelry. In total, that other missing jewelry was valued at more than $1,000. Those items were never recovered. The victim's insurer paid the victim $1,000 for her loss.[1]

The state charged defendant with first-degree theft on the theory that he had committed theft by receiving. *See* ORS 164.055(1)(c) (defining first-degree theft as when "[t]he theft is theft by receiving committed by buying, selling, borrowing or lending on the security of the property"). The indictment alleged that "defendant, on or about September 25, 2012, in Douglas County, Oregon, did unlawfully and knowingly commit theft of jewelry, the property of [the victim], by selling the property, defendant knowing that the property was the subject of theft." Defendant pleaded guilty.

---

[1] On appeal, defendant argues that the trial court erred when it determined that the victim's insurance company incurred economic damages as a result of his criminal conduct. We conclude, however, that that argument was not preserved; therefore, we do not address it.

In doing so, he did not limit his plea to certain items of jewelry. Later, however, defendant objected to the state's proposed restitution amount, which was based on the value of all the jewelry that the victim was missing.

At the restitution hearing, Deputy Lee related what defendant had told him during an interview. Defendant "admitted he was the one responsible for this theft"; admitted that he "opened [the victim's] dresser drawer in the bedroom, and he saw the jewelry boxes, so he started opening them up and taking the jewelry"; and explained that he stole the jewelry because he needed money to pay "for some court-ordered counseling that he was going through." Defendant told Lee that he was high on methamphetamine when he committed the theft, and that he was having difficulty remembering the details of the crime, although he remembered selling items either to "a guy in Roseburg" or "a girl down in Green." At another point in the interview, Lee recited a list of the items that the victim had reported missing. Defendant told Lee that "he didn't remember taking all that." Defendant did, however, say that he was "sorry for what he did" and that he would try to recover the jewelry, although defendant could not remember to whom he had sold all of it.

Over defendant's objections, the trial court ordered defendant to pay the victim restitution for all of the jewelry that the victim had reported missing in addition to the opal necklace.

Although defendant pleaded guilty to, and was convicted of, theft-by-receiving, both defendant and the state frame their arguments on appeal as if the operative theory were theft by *taking*. For example, defendant remonstrates that

> "[t]he state did not allege in the indictment that defendant had stolen the property from [the victim] in the first place, and though some evidence at the restitution hearing indicated that defendant had stated to a police officer that he had done so, that statement is not an admission on the record sufficient to support a restitution award."

(Citations omitted.) Similarly, the state defends the restitution award by arguing that, when defendant "told the officer

that he stole the missing jewelry," he admitted the criminal conduct necessary to support the restitution award in full. That point is contested by defendant, who contends that, under our case law, an out-of-court statement is not a sufficient admission of guilt.

Our review of the record persuades us that the trial court's reasoning was different than what the parties implicitly portray and that the record supports the restitution award (albeit for reasons different than the state argues). Specifically, the trial court's award is a permissible result of defendant's guilty plea itself, which is sufficient to encompass all of the victim's missing jewelry, not just the necklace.

During the restitution hearing, the state argued that defendant "has admitted to or entered a plea with regard to the sale of this property to other individuals."

The court then questioned the state about what the evidence showed:

"THE COURT: Well, what evidence is it that all of the property that was taken—and that is a separate crime, the taking as opposed to the selling—what evidence is there that the property that you've listed here that is valued at $1,000 to the insurance company was sold?

"[THE STATE]: His statement to Deputy Lee. And it's corroborated—

"THE COURT: That he sold all the property?

"[THE STATE]: That he sold all the property. Because he attempted—he was given the list, he was told the list, and he attempted to get it back from those he sold it to. * * *

"* * * * *

"THE COURT: And how do we know that he sold all of the items as opposed to keeping or giving them away?

"[THE STATE]: Because he, in the interview with Deputy Lee, told Deputy Lee how he took the multiple pieces of jewelry, who he sold them to, not by name, but—I don't know if you recall the testimony, but first he said it was some guy, then it was some girl. Then he wanted some time to go try to get the property back without giving names.

He also explicitly told Deputy Lee he didn't tell those people that they were stolen items. *So, your Honor, because he pled to theft by selling, not theft by selling only to [the pawn shop], that the Court can consider the aggregate, all of the activity, as a part of this plea."*

(Emphasis added.)

The state also relied on the indictment's text. The state explained, "I don't know if jewelry is a singular—you know, we would have listed 'a necklace.' But jewelry is a plural word. And so, your Honor, it's for that reason it's the quantum group that he pled to, not just the necklace at [the pawn shop]."

Ultimately, the court ruled:

"I'm going to order it—because of his admissions and the theory here that it's theft by—not by taking but by receiving that—by selling, excuse me, and—theft by selling, *and it is jewelry,* and I have listed here property taken and claimed, and then his admissions to Deputy Lee that he sold the property that was taken to other individuals, I'm ordering restitution in the amount claimed * * *."

(Emphasis added).

ORS 137.106 authorizes a trial court to order restitution "[w]hen a person is convicted of a crime * * * that has resulted in economic damages[.]" A court may only order restitution for economic damages that were caused by the defendant's offense against the victim, or by defendant's other criminal activities, ORS 137.106(1)(a). "Criminal activities" are defined as "any offense with respect to which the defendant *is convicted* or any other criminal conduct *admitted* by the defendant." ORS 137.103(1) (emphases added). Accordingly, there are three prerequisites for an award of restitution: "(1) criminal activities, (2) [economic] damages,[2] and (3) a causal relationship between the two." *State v. Dillon,* 292 Or 172, 181, 637 P2d 602 (1981). Although whether those prerequisites have been met is ultimately a legal question, *State v. Sigman,* 141 Or App 479, 483, 919 P2d 45 (1996), the answer to that question will necessarily

---

[2] In 2005, the legislature amended the statutes governing restitution so that they refer to "economic damages" rather than "pecuniary damages." Or Laws 2005, ch 564, §§ 1-8. That change has no effect on our analysis in this case.

depend on the trial court's factual findings. To justify a judgment that includes an order to pay restitution, the court is not limited to the facts found by the jury, but may conduct additional fact-finding regarding the amount of damages during the sentencing. *State v. Hart*, 299 Or 128, 136-37, 699 P2d 1113 (1985). In other words, "the trial court may consider any evidence that it ordinarily would at a sentencing hearing." *Sigman*, 141 Or App at 483.

Nevertheless, there is at least one absolute limit on a trial court's authority to conduct factfinding to justify a restitution order: A defendant "cannot be required to pay restitution for pecuniary damages arising out of criminal activity for which he was not convicted or which he did not admit having committed." *State v. Seggerman,* 167 Or App 140, 145, 3 P3d 168 (2000). Thus, when determining what "criminal activities" a defendant has committed, a court may consider only the crimes for which the defendant was convicted or other conduct that the defendant has admitted, provided that the defendant's admission is unequivocal and clearly reflected in the record. *State v. Thorpe*, 217 Or App 301, 306, 175 P3d 993 (2007). In no event may a court "determine that a defendant *could be* guilty of a crime that resulted in pecuniary damage to a victim." *Sigman*, 141 Or App at 484 (emphasis in original).

Two cases illustrate the point. In *State v. Dorsey*, 259 Or App 441, 442, 314 P3d 331 (2013), the defendant, who worked as a cashier at a supermarket, was charged with stealing money from the cash register "on or about July 21, 2010[.]" In her plea petition, she admitted that from July 21 to August 5 she stole more than $1,000 from her employer. *Id.* The trial court, however, imposed restitution based on testimony from the store's owners about the amount of money that went missing during the entire 85 days of the defendant's employment. *Id.* We held that it was plain error for the trial court to base its restitution amount on the entire period of the defendant's employment. *Id.* at 446 (reasoning that the "[d]efendant was not convicted for, and did not admit to, thefts that took place other than those committed from July 21 to August 5"). We reached a similar conclusion in *State v. Howett*, 184 Or App 352, 354-58, 56

P3d 459 (2002), holding that, because the defendant pleaded guilty to committing thefts "on or between" October 3 and October 7, "[t]he trial court was not authorized to impose additional restitution for amounts allegedly taken before the time period charged"; *see also State v. Thornton*, 103 Or App 296, 796 P2d 1252 (1990) (trial court erred in ordering the defendant, who was convicted of theft for stealing cash and tires from the service station where he worked, to pay restitution for a car stereo that disappeared from the station the same night, where defendant was not charged with and did not admit taking the stereo).

We have, however, given trial courts much more latitude to conduct factfinding on the causal relationship between a defendant's criminal activities and a victim's pecuniary damages. For example, in *State v. Doty*, 60 Or App 297, 299, 653 P2d 276 (1982), the defendant pleaded guilty to second-degree theft and admitted to "kicking in the victim's door and taking a vacuum cleaner and a pellet gun." The victim, however, testified that other items were missing, including jewelry and silver. *Id.* Defendant denied taking those items. *Id.* Nevertheless, the trial court awarded restitution based on the victim's loss of those items. *Id.* We affirmed the award, reasoning that,

> "[a]lthough defendant was not convicted of and did not admit theft of property over the value of $200, in a civil action arising out of the 'facts or events constituting defendant's criminal activities' he could have been found liable for the entire amount of the victim's loss. We believe that neither the indictment, the facts admitted nor the facts established by the conviction limit the amount of restitution that may be ordered. Rather, if the loss 'resulted,' in a 'but for' sense, from defendant's criminal activities, then the amount of restitution is determined in a separate evidentiary hearing in which the trier of fact determines, as in a civil case, *State v. Dillon*, 292 Or 172, 637 P2d 602 (1981), the money equivalent of the property for the taking or destruction of which the defendant *could* be found civilly liable."

*Doty*, 60 Or App at 300 (emphasis in original). We concluded that the defendant "could have been found liable in a civil action for the loss resulting from the purported second

burglary facilitated by his own negligent conduct in leaving the victim's premises unprotected after his own criminal conduct had ended."[3] *Id.*

Here, the trial court determined that defendant's criminal activities consisted of selling the victim's stolen jewelry, which caused economic damages. The record supports that determination. At the restitution hearing, evidence was presented that defendant told police that he took jewelry from the victim's dresser and that he sold it to pay for court-ordered counseling. The victim testified about what had been taken that day. The state submitted documents from the victim's insurer listing the missing items and their value. Thus, the only real question in this case is whether the trial court, in calculating the damages for purposes of restitution, applied too broad a definition of defendant's "criminal activities." On that point, defendant insists that the only criminal activity of which he was *convicted* relates to the opal necklace. That is not borne out by the record.

The indictment charged defendant with "theft of jewelry, the property of [the victim], by selling the property, defendant knowing that the property was the subject of theft." By its terms, the indictment was not limited to a specific item or items. Nor did defendant limit his guilty plea by reference to certain items. Having convicted defendant of that criminal conduct, the trial court was authorized to take account of the additional facts presented at the hearing to determine the amount of damages. We easily conclude that the trial court's calculation is supported by evidence in the record.

Affirmed.

---

[3] When the legislature amended the restitution statutes to allow for "economic damages," it expanded the scope of restitution. *State v. Ramos*, 267 Or App 164, 176, 340 P3d 703 (2014). Thus, restitution is no longer "limited to damages that would be recoverable in a civil action." *Id.* at 175.