Submitted April 25, 2014, resubmitted en banc March 4, award of restitution
reversed, otherwise affirmed September 16, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SCOTT B. GERHARDT,
*Defendant-Appellant.*

Polk County Circuit Court
12P3329; A152760

359 P3d 519

Peter Gartlan, Chief Defender, and Lindsey K. Detweiler, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Cecil A. Reniche-Smith, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Chief Judge, and Armstrong, Ortega, Sercombe, Duncan, Nakamoto, Hadlock, Egan, DeVore, Tookey, Garrett, and Flynn, Judges.

ARMSTRONG, J.

Egan, J., dissenting.

Flynn, J., dissenting.

**ARMSTRONG, J.**

Defendant appeals an amended judgment of conviction for strangulation, ORS 163.187, challenging the trial court's order that he pay restitution for attorney fees that the court found that the victim had incurred as a result of the strangulation. Defendant contends that the trial court erred in awarding restitution because the attorney fees were not incurred as a result of the strangulation but, rather, as a result of defendant's persistent violation of a no-contact order that a court had entered after defendant's arrest. We agree with defendant and reverse the restitution award.

The facts are undisputed. Defendant was arrested for strangling the victim—his wife—and was jailed as a result. While in jail, defendant was subject to a court order that barred him from contacting the victim. Defendant repeatedly violated that order, which eventually prompted the victim to hire an attorney to seek enforcement of the no-contact order and to obtain a restraining order under the Family Abuse Prevention Act (FAPA). Defendant ultimately pleaded guilty to the strangulation charge, and the victim requested a restitution award under ORS 137.106(1)(a) for, among other things, $1,880 in attorney fees that she had paid her attorney for services related to the no-contact and FAPA orders. The trial court awarded the requested attorney fees, and defendant appealed.

ORS 137.106(1)(a) is the source of a court's authority to award restitution. It provides, as relevant:

"When a person is convicted of a crime *** that has resulted in economic damages, the district attorney shall investigate and present to the court, at the time of sentencing or within 90 days after entry of the judgment, evidence of the nature and amount of the damages. *** If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."

For purposes of that statute, "economic damages" is defined by ORS 31.710(2)(a):

> " 'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past * * * impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."[1]

Under those provisions, economic damages that can be awarded as restitution include reasonable expenses necessarily incurred by a victim to redress the harm caused to the victim by a defendant's criminal conduct.

Here, the district attorney submitted to the court a written restitution request from the victim that identified a number of expenses for which she sought restitution. In it, the victim succinctly described the basis for her request to receive restitution for the attorney fees that she had incurred:

> "Attorney Fees: $1,880.00

> "Hired after [defendant's] repeated violations of the no contact order while in jail[.]

> "Attorney assisted in contacting the jail to get a copy of the no contact order and release provisions, to contact the district attorney and Victim's Assistance on the plea offer, restitution and no contact provisions, obtaining a FAPA restraining order after [defendant's] previous violations of no contact order with no repercussions, gathering evidence of violation of no contact provisions[.]"

The request was accompanied by a bill from the attorney that described the work that she had done and the time that she devoted to most of the tasks. Neither the victim nor her attorney testified at the restitution hearing.

---

[1] The definition of "economic damages" in ORS 31.710(2)(a) includes "future impairment of earning capacity," but that aspect of the definition is inapplicable to restitution awarded under ORS 137.106(1). ORS 137.103(2)(a).

As noted, the trial court found that defendant's strangulation of the victim had caused her to incur $1,880 in attorney fees. However, as the restitution request establishes, it was defendant's repeated violation of the no-contact order that caused the victim to hire an attorney to address the violations, that is, to address defendant's post-arrest conduct. Defendant's commission of the crime of strangulation was a necessary predicate for all of that, but it was not sufficient to cause the victim to incur the attorney fees. In other words, it was defendant's conduct *after* he committed the crime that led the victim to conclude that she needed to hire an attorney to address that conduct and, hence, caused her to incur the attorney fees.

The circumstances of this case are readily distinguishable from cases in which we have upheld restitution awards for expenses that victims have incurred to redress the harm caused to them by a defendant's criminal conduct. For example, in *State v. Pumphrey*, 266 Or App 729, 338 P3d 819 (2014), *rev den*, 357 Or 112 (2015), we upheld an award for various expenses that the victim had incurred to address the harm caused to her by the defendant's violations of a stalking protective order (SPO), which were the crimes for which the defendant was convicted. The defendant's criminal conduct, *viz.*, his violations of the SPO, caused the victim to suffer severe panic attacks, which, in turn, caused her to incur various expenses for which the trial court awarded restitution, including the cost to change the locks at the victim's home and her phone number, the cost of a temporary residence, and lost wages for the workday that the victim devoted to getting the locks changed.

The defendant challenged the trial court's award of those expenses on the ground that they represented expenses incurred to protect against future criminal conduct by the defendant and not to redress harm that the victim had suffered as a result of his violations of the SPO. We rejected the challenge, explaining that it was

"undisputed that defendant's violations of the SPO caused the victim to suffer severe panic attacks and fear of defendant, and the victim testified that she changed her locks because defendant had learned her home address. Moreover,

> the record also supports an inference that the safety measures the victim took helped her manage the psychological trauma caused by defendant's crimes."

*Id.* at 735-36 (emphasis omitted). In other words, the record supported a finding that the victim's expenses were necessarily incurred to redress the harm that she had suffered as a result of the defendant's criminal conduct. They were not expenses that the victim had incurred to address conduct by the defendant other than his criminal conduct.

Similarly, in *State v. Doty*, 60 Or App 297, 653 P2d 276 (1982), we upheld a restitution award of $2,000 for property stolen from the victim's home in a burglary. The defendant had pleaded guilty to the theft of items from the victim's home valued at less than $200 and had admitted to kicking in the door to steal the items. He claimed, however, that someone else must have taken the rest of the victim's property and, as a consequence, that he could be liable only for the $200 in property that he had stolen. Under the applicable law, a person can be liable in restitution for crimes for which the person is convicted as well as for criminal conduct that the person admits to having committed, *see* ORS 137.103(1), making the defendant liable for both the theft and any losses caused by the burglary. We concluded that the entire loss resulted from the defendant's criminal activities:

> "Defendant does not seriously dispute the loss of the missing items but denies having taken the jewelry himself. However, regardless of whether defendant actually stole the jewelry, the entire loss 'resulted' from his 'criminal activities,' including the admitted kicking in of the victim's door, because it at least created free access to the home for the hypothetical subsequent theft."

*Doty*, 60 Or App at 300. In other words, the defendant's criminal activities caused the victim to suffer the harm for which she received restitution, *viz.*, the loss of $2,000 in personal property. *See also State v. Stephens*, 183 Or App 392, 394-97, 52 P3d 1086 (2002) (convictions for unauthorized use of vehicle and possession of stolen vehicle supported award of restitution for loss of wheels and tires from stolen vehicle because loss resulted from defendant's criminal

conduct notwithstanding that defendant had not been convicted of nor admitted taking wheels and tires); *State v. Bullock*, 135 Or App 303, 307, 899 P2d 709 (1995) (contested expenses were the result of defendant's criminal conduct—sexual offenses committed against defendant's 9-year-old daughter—because "emotional and psychological problems that required the victim's removal from the home were a natural consequence of defendant's criminal activities").

Here, the attorney fees that the court awarded as restitution do not represent an expense that the victim necessarily incurred to redress harm that she suffered as a result of defendant's strangulation of her. Rather, they represent an expense that the victim concluded that she needed to incur as a result of conduct in which defendant had engaged *after* he had committed the crime for which he was convicted. Hence, the attorney fees do not represent economic damages that the victim suffered as a result of defendant's criminal conduct.

The dissents disagree. Judge Egan contends that our decision conflicts with *State v. Ramos*, 267 Or App 164, 340 P3d 703 (2014), *rev allowed*, 357 Or 143 (2015). It does not.

In *Ramos*, an insurance company hired various professionals to investigate an arson fire and fraudulent insurance claim by the defendant. The defendant was convicted of arson and attempted aggravated theft, the latter of which was based on the fraudulent insurance claim. We upheld a restitution award for the professional expenses that the insurance company had incurred. One portion of those expenses related to the investigation of and response to the fraudulent insurance claim, that is, for the expenses incurred to respond to the attempted aggravated theft. The other portion resulted from services provided in conjunction with the state's investigation and prosecution of the defendant's crimes. Under Oregon law, the insurance company was required to cooperate with the state investigation and to provide the state with any nonprivileged information that it had. ORS 731.592(1). The company had to fulfill those obligations in order to be eligible to receive restitution for the economic damages that it had incurred as a result of the

defendant's criminal conduct. ORS 731.592(5). Hence, all of the expenses were expenses that the insurance company necessarily incurred as a result of the defendant's criminal conduct.

In contrast, the expenses at issue in this case were incurred by the victim as a result of conduct by defendant that occurred after the criminal conduct for which he was convicted. They are not comparable to the expenses for which the insurance company received restitution in *Ramos*.

Judge Flynn, in turn, contends that our decision conflicts with cases such as *Pumphrey* and *Doty* in which we have upheld awards for damages incurred as a result of conduct or events that occurred after the criminal conduct for which the defendants were responsible. Those cases reflect a principle that restitution can be awarded for damages that are a foreseeable consequence of a defendant's criminal conduct.

However, we do not believe that that principle extends to allow an award of restitution for expenses incurred by a victim as a result of unlawful acts committed by a defendant after the criminal acts on which the award is based. It is certainly foreseeable that a person who commits an act of domestic violence may commit subsequent acts of domestic violence against the same victim. Nonetheless, a restitution award for a conviction for an initial act of domestic violence could not permissibly include damages for injuries sustained as a result of subsequent violent acts by the defendant. That is analogous to the circumstance presented by this case, in which the victim incurred the expenses that she did because of defendant's repeated violation of the no-contact order, that is, in response to unlawful conduct in which defendant engaged after the criminal conduct for which he was convicted.

Award of restitution reversed; otherwise affirmed.

**EGAN, J.,** dissenting.

I agree with Judge Flynn that, with respect to both our well-established and more recent precedent, the majority opinion departs from our case law. As far back as *State*

*v. Doty,* 60 Or App 297, 653 P2d 276 (1982), we stated that the test for causation in restitution is a "but for" test. As recently as *State v. Pumphrey,* 266 Or App 729, 338 P3d 819 (2014), *rev den,* 357 Or 112 (2015), and *State v. Ramos,* 267 Or App 164, 340 P3d 703 (2014), *rev allowed,* 357 Or 143 (2015), we reaffirmed that test in restitution cases, holding that a defendant's criminal activities need not directly cause a victim's cost. The court does not disavow that precedent. I write separately to emphasize that the court's departure from precedent in this case creates an inconsistent application of law, which I would rectify by overturning *Ramos,* were I to agree with the majority.

In *Ramos,* an insurance company hired a private attorney to provide legal guidance and steer a private investigation into a fire loss at the defendant's restaurant, which was insured by the company. *Id.* at 173. The insurance company conducted the private investigation simultaneously to the state's criminal investigation of the defendant. Following the defendant's conviction for theft by deception for filing a false insurance claim, the insurance company sought restitution in the amount of $28,417.98 for the cost of the private investigation. *Id.* at 174.

When analyzing the causal connection between the defendant's actions and the insurer's costs, we reasoned that the events constituted a chain of causation: The defendant's actions caused the police investigation. The police investigation, in turn, caused the private investigation.[1] *Id.* at 179. We determined that that final link in the causal chain existed in light of ORS 476.270 (discussing an insurer's obligation to share information with law enforcement) and ORS 731.592 (same in relation to restitution).[2] *Id.* at 179.

---

[1] "Thus, defendant's criminal actions instigated those investigations and prosecution, and, in turn, resulted in the expenses that Oregon Mutual incurred in connection with those investigations and prosecution * * *." *Ramos,* 267 Or App at 179. Indeed, it could not be that the defendant's actions were the direct cause of the insurer's obligation to share information, because without the intervening investigation there would be no one with whom to share the information.

[2] ORS 476.270(2) requires that, upon request, an insurance company "shall release [relevant information in its possession] to the official who requests it." ORS 731.592(1) also requires an insurer to provide nonprivileged information to state and federal law enforcement when requested, and ORS 731.592(5) states that insurers who fail to do so are not eligible to receive restitution.

Oregon law does not require an insurer to conduct a private overlapping investigation, nor does it require the insurer to hire a private attorney to steer that investigation when the state is pursuing criminal charges against an insurance carrier. Although, as the majority notes, ORS 731.592(5) requires insurers to turn over any non-privileged information to state or federal law enforcement when requested as a prerequisite to receiving restitution, the insurer's decision to incur additional costs related to that requirement is a choice, not a necessity. That distinction was immaterial in *Ramos*. Under the law as it stood at the time, we upheld the restitution award—even though the defendant's actions were not the direct cause of the insurer's costs—because the defendant's actions were the "but for" cause of the insurer's choice to conduct a private investigation. *Ramos*, 267 Or App at 180.

A victim of domestic violence may take considerable personal risk in reporting an abuser's actions to police. That report is risky because the abuser abused the victim, not simply because he violated a no-contact order. A Family Abuse Prevention Act (FAPA) order helps protect victims from that risk. The law, as it stood, encouraged victims of domestic violence, like the victim here, to seek the protection of a FAPA order. We should not weaken that policy.

Aside from representing an unwise change in policy, the reasoning in the majority's opinion is inconsistent with our case law. In casting the law anew, the majority has created slag. Were *Ramos* to be considered under the analysis laid out by the majority in this case, the outcome in *Ramos* would be different. Consequently, were I to agree with the majority, I would overturn *Ramos*. I respectfully dissent.

**FLYNN, J.,** dissenting.

I agree with the majority that the "economic damages that can be awarded as restitution include reasonable expenses necessarily incurred by a victim to redress the harm caused to the victim by a defendant's criminal conduct." 273 Or App at 594. I respectfully disagree, however, that the language of the victim's restitution request, here, precludes an award of restitution for the expense necessary for the victim to obtain a Family Abuse Prevention Act

(FAPA) restraining order. I dissent separately to emphasize my understanding that our causation standard does not make restitution dependent on whether defendant's commission of the crime of strangulation was "sufficient to cause" the victim's need for a restraining order. *Id.* at 595.

We have repeatedly affirmed orders of restitution when the defendant's criminal conduct was not sufficient to cause the harm, *i.e.*, when additional contribution from subsequent events was needed to produce the ultimate damage. *See State v. Stephens*, 183 Or App 392, 394, 399, 52 P3d 1086 (2002) (in sentence for conviction of unauthorized use of a vehicle and possession of stolen vehicle, affirming restitution order for expense of wheels and tires that went "missing" from the stolen vehicle while defendant had possession of the car); *State v. Porter*, 113 Or App 326, 329, 832 P2d 1257 (1992) (in sentence for conviction of attempting to elude a police officer, affirming restitution order for damage to a patrol car caused when officer lost control and hit a tree stump while pursuing the defendant); *State v. Doty*, 60 Or App 297, 300, 653 P2d 276 (1982) (in a sentence for a conviction for burglary, affirming restitution order that included cost of items arguably stolen from victim's home by someone else after defendant kicked in the door, because the defendant's criminal acts "facilitated" the loss).

Although ORS 31.710(2)(a)—the definition of "economic damages"—uses the phrase "necessarily incurred" to describe some examples of "objectively verifiable monetary losses," that statute does not purport to specify a standard of causation necessary for recovery of those "objectively verifiable monetary losses." Rather, ORS 31.710(2)(a) defines "economic damages," as distinguished from "noneconomic damages," the recovery of which the statute purports to limit in civil actions. The definition leaves the standard of causation to be set by the particular statutory or common-law authority under which the damages are claimed—here ORS 137.106(1)(a). Thus, we have explained that "there are three prerequisites to an order of restitution: (1) criminal activities, (2) economic damages, and (3) a causal relationship between the two." *State v. Pumphrey*, 266 Or App 729, 733, 338 P3d 819 (2014), *rev den*, 357 Or 112 (2015).

In this case, the first prerequisite has never been denied. And I see no basis for dispute that the record permits an inference that the second prerequisite is met, *i.e.*, an inference that, under the circumstances, the victim's cost to secure a restraining order was an objectively verifiable and necessarily incurred[1] monetary expense. That leaves only the question whether the trial court could find the required causal relationship between the defendant's criminal activities and the victim's economic damages. To supply the necessary connection, we have held that the "defendant's criminal activities must be a 'but for' cause of the victim's economic damages[; however,] the damages need not be the *direct* result of [the] defendant's criminal activity." *Pumphrey*, 266 Or App at 734 (emphasis in original; citing *Stephens*, 183 Or App at 396).

I view our decision in *Pumphrey* as offering a particularly pertinent illustration of allowing restitution for expenses when the defendant's criminal conduct was a "but for" cause but not a "sufficient" cause. The defendant in *Pumphrey* was convicted of violating a stalking protective order by contacting the victim at her place of work, which caused the victim to "suffer severe panic attacks and fear of [the] defendant[.]" 266 Or App at 735-36. The victim later incurred expenses related to changing her locks and, as we explained, "testified that she changed her locks *because* [the] defendant had learned her home address." *Id.* at 736 (emphasis in original). Despite that additional contribution from subsequent, uncharged conduct, we rejected the defendant's contention that no evidence connected those expenses to the defendant's charged criminal activity sufficiently to permit restitution. *Id.* at 735-36. We also rejected the defendant's argument that "expenses associated with preventing future crimes are necessarily unrelated to the crimes for

---

[1] Our cases suggest that whether an expense is "necessarily incurred" may be proved by evidence that the victim perceived a need for the expense. *See State v. Ramos*, 267 Or App 164, 178, 340 P3d 703 (2014), *rev allowed*, 357 Or 143 (2015) (affirming restitution award for attorney fees when insurance company—after denying a fire insurance claim as fraudulent—decided it needed a private attorney to help secure an indictment and conviction of its insured); *State v. Jordan*, 249 Or App 93, 100, 274 P3d 289, *rev den*, 353 Or 103 (2012) (affirming restitution award for expense of naturopathic treatments and organic foods for brain injury victim based on evidence victim's wife "believed" those were "really successful").

which a defendant already has been convicted." *Id.* at 736. As in *Pumphrey* (and *Stephens* and *Porter* and *Doty*), it is enough that defendant's criminal act of strangling the victim was a "but for" cause of her need to seek a restraining order, even if other, uncharged activity is also a "but for" cause.

The trial court found that "but for" causal connection, and our standard of review—in my opinion—requires us to affirm. *See, e.g., State v. Jordan*, 249 Or App 93, 96, 274 P3d 289, *rev den*, 353 Or 103 (2012) ("We review the trial court's factual findings in connection with an award of restitution to determine whether there is any evidence to support them."). The itemized bill from the victim's attorney shows that the victim first contacted the attorney regarding a restraining order on the day that defendant posted bond for his release from jail—the day following the strangulation when the victim became at risk of direct contact from defendant. This is some evidence from which the trial court could infer that the crime—particularly its effect on the victim—was a "but for" cause of the victim's need to secure protection. As in *Pumphrey*, that cost to secure protection could be awarded as restitution.

Moreover, the record shows that the need to protect victims of domestic violence from future contact is such a well-recognized consequence of the crime that a condition of "no contact" was part of the preprinted forms given to defendant, both when he was arraigned and when he was released from custody pending trial. Thus, I am unwilling to second guess the trial court's finding that defendant's crime of domestic violence caused the victim's need to prevent contact, a need that ultimately was met with the FAPA order. *See State v. Bullock*, 135 Or App 303, 307, 899 P2d 709 (1995) (causal requirement of ORS 137.106(1) met because the emotional and psychological problems the victim developed after sex abuse, which required victim's placement in residential treatment, "were a natural consequence of defendant's criminal activities"). Evidence that the victim sought a FAPA order after the prior "no-contact" provision failed to adequately protect her may mean that defendant's subsequent acts were also a "but for" cause of the victim's damages. But, as *Pumphrey, Stephens, Porter,* and *Doty* all make clear, the

combining of charged criminal conduct with uncharged conduct to bring about monetary losses does not preclude a finding that the crime was a "but for" cause of the loss.

Although I have reservation about using the mechanism of restitution to shift the cost of a victim's private attorney to defendants, we have already taken that path. In *State v. Mahoney*, 115 Or App 440, 442, 838 P2d 1100 (1992), *modified on recons*, 118 Or App 1, 846 P2d 413, *rev den*, 316 Or 142 (1993), the victim of ongoing sexual abuse paid for an attorney's assistance and advice through the process of obtaining a criminal complaint and conviction against the defendant. We affirmed an award of restitution for the victim's attorney fees, reasoning that "[t]here is little question but that the attorney fees were incurred because of defendant's criminal activities." *Id.* at 443. In *State v. Ramos*, 267 Or App 164, 179, 340 P3d 703 (2014), *rev allowed*, 357 Or 143 (2015), an insurance company denied its insured's fire claim as fraudulent and then paid a private attorney to help secure the indictment and conviction of its insured for arson and attempted theft. We affirmed an award of restitution for those private attorney fees.

In both *Ramos* and *Mahoney*, the private attorney helped the victim ensure that the state's criminal justice process functioned effectively. The fees incurred by the victim, here, served a similar purpose. Beginning with defendant's arraignment for strangulation, the criminal justice process imposed restrictions intended to protect the victim from further contact. When contact, nevertheless, continued, the victim hired a private attorney to effectively enforce the "no contact" protections through a FAPA restraining order. Assuming that we have correctly taken the path of including some private attorney fees within the scope of permitted restitution, I am unwilling to hold that the path stops short of allowing victims of domestic violence to recover attorney fees necessary to secure protection from contact by the abuser.

I respectfully dissent.

Ortega, J., Nakamoto, J., and Egan, J., join in this dissent.