Submitted February 25; supplemental judgment reversed in part and remanded, otherwise affirmed October 13, 2021; petition for review denied February 3, 2022 (369 Or 211)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JASON MICHAEL HENRY,
*Defendant-Appellant.*

Washington County Circuit Court
18CR68346; A171734

499 P3d 863

Defendant appeals from a supplemental judgment awarding restitution, arguing that the trial court (1) erred by ordering restitution for medical costs stemming from the victim's emergency department visit; (2) plainly erred by ordering restitution for economic damages arising from criminal activity that defendant did not plead guilty to, or admit to having committed; and (3) erred by denying his motion for substitute counsel. *Held*: There was insufficient evidence in the record to support the reasonableness of the medical costs; therefore, the trial court erred in awarding restitution for those costs. The trial court, however, did not plainly err by ordering defendant to pay restitution for the victims' economic damages. Further, the trial court did not abuse its discretion when it denied defendant's motion for substitute counsel.

Supplemental judgment reversed in part and remanded; otherwise affirmed.

Oscar Garcia, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

Supplemental judgment reversed in part and remanded; otherwise affirmed.

**POWERS, J.**

Defendant appeals from a supplemental judgment awarding restitution entered after he pleaded guilty to burglary in the first degree, ORS 164.225, and two counts of unlawful use of a weapon, ORS 166.220. Defendant asserts that the trial court (1) erred by ordering restitution for medical costs stemming from the victim's emergency department visit; (2) plainly erred by ordering restitution for economic damages arising from criminal activity that defendant did not plead guilty to, or admit to having committed; and (3) erred by denying his motion for substitute counsel. For the reasons explained here, we reverse the restitution award for the medical costs stemming from the emergency department visit and otherwise affirm.

On an evening in October, Archer was working on his car in his driveway while his two teenage boys were playing football in the street with their friends. Defendant, who spent the evening at a local bar, drove by Archer's home. As defendant passed, one of the teenagers waved at him and exclaimed, "nice truck." Defendant became enraged, pulled his truck over, and then got out to chase the teenagers while yelling threats at them. Defendant chased the teenagers into Archer's garage, where defendant grabbed a crowbar and struck Archer's son, B, injuring B's hand and causing B to hit his head. Archer subdued defendant temporarily, but defendant was able to return to his truck and armed himself with a firefighter-style axe. Defendant started approaching the house again but was stopped by Archer, who held defendant at gunpoint until police arrived.

As a result of the incident, B's mother drove B to the Kaiser Emergency Center where B was treated for an injury to his hand and a concussion. B's mother stayed home from work for three days to monitor B's injuries. His parents also sought out counseling for B to help him process the event. The state charged defendant with five crimes arising from the incident: assault in the second degree, ORS 163.175; burglary in the first degree, ORS 164.225; three counts of unlawful use of a weapon, ORS 166.220(1)(a); menacing, ORS 163.190; and criminal mischief in the first degree, ORS 164.365. Ultimately, defendant pleaded guilty to burglary in

the first degree and two counts of unlawful use of a weapon, and the state agreed to dismiss the remaining charges. The trial court accepted the pleas, and the state later sought restitution for B's and his parents' economic damages.

At the start of the restitution hearing, defendant's counsel told the trial court that defendant no longer wished to be represented by him. When asked by the court what the situation was, defendant complained that his lawyer

> "doesn't want to represent me properly. He's been telling me to sign the plea deal for 60 months which I was forced into doing, *** and he just wants me to sign this restitution fee, because I am going to lose my ass, basically is what he told me."

Defendant added that his counsel's behavior was not very professional, and that defendant did not want his current counsel to represent him. Defendant also told the court that his family was in the process of hiring a new lawyer; however, when asked for more details and whether the lawyer was appearing for the restitution hearing, defendant said that he did not know the lawyer's name and that the lawyer was not going to appear. The court informed defendant that it ultimately would be the one to decide whether there would be restitution, not defendant's counsel. After clarifying with defendant that he was "making an oral request to the Court for a different lawyer," the court denied defendant's motion to substitute counsel and proceeded with the restitution hearing.

The state requested $2,224.77 in restitution, which consisted of B's medical costs and counseling services paid for by the Crime Victims' Compensation Program (CVCP) and his parents' lost wages. In support of a restitution award, the state presented an affidavit executed by a CVCP representative that explained how CVCP determines whether crime victims are eligible for compensation and described the awarded benefits and amounts that CVCP paid for B's medical costs. Along with the affidavit, the state also presented testimony from B's parents describing the economic damages their family incurred from having to miss work to attend court hearings and care for B's injuries.

Defendant objected to the restitution request. Regarding B's medical costs, defendant argued that there was no evidence from CVCP or a medical provider to explain why the expenses were incurred and whether the expenses were reasonable. As to the amount requested for lost wages, defendant argued that the time B's mother took off work was voluntary and that she had not been subpoenaed to attend the court hearings. The state remonstrated that the medical costs were inherently reasonable given their "modest amount." Further, the state asserted that it was reasonable for B's parents to take off work to attend court hearings on behalf of their minor child. After reviewing the evidence, the trial court ruled that the amount requested for restitution was reasonable and foreseeable, and ordered defendant to pay $2,224.77 in restitution.

On appeal, defendant first renews his argument that the state failed to prove the reasonableness of the medical costs. Defendant asserts that the state did not present a medical bill from B's emergency department visit, and that the evidence that CVCP paid the medical bill was not enough to support a finding of reasonableness. Second, defendant argues that the trial court erred in ordering him to pay $827.53 in restitution for B's medical costs and $689.28 in restitution for B's mother's lost wages when she stayed home with B, because they were based on damages caused by the crimes to which he did not plead guilty. That is, defendant submits that he pleaded guilty only to burglary and two counts of unlawful use of a weapon; however, because he did not plead to assault or otherwise admit to causing B any injury, the trial court erred in awarding restitution. Defendant acknowledges, however, that he did not preserve that argument and requests that we conduct plain-error review. Relying on *State v. Howard*, 292 Or App 517, 424 P3d 803 (2018), defendant asserts that the trial court plainly erred when it required him to "pay restitution for damages that were not caused by his criminal activity." Third, defendant argues that the court abused its discretion in denying his motion for substitute counsel. Defendant argues that the court summarily denied his motion and did not conduct a fact-specific inquiry after being presented with a legitimate complaint about his counsel.

        In response, the state first asserts that there is sufficient evidence in the record to support the trial court's finding that the amounts paid by CVCP were reasonable. The state, however, acknowledges that in *State v. J. M. E.*, 299 Or App 483, 489, 451 P3d 1018 (2019), we held that payment by CVCP—without more—does not permit a trial court to find that the amount paid was reasonable for purposes of a restitution award.[1] Second, with regard to defendant's plain-error contention, the state asserts that his argument overlooks the fact that "the first-degree burglary charge to which defendant did plead guilty [to] specifically alleged that 'during [that] offense the defendant caused or attempted to cause physical injury to another person.'" (Emphasis omitted.) Therefore, because defendant did not "expressly deny that allegation at the change of plea hearing," the state contends that the conduct that injured B was encompassed in defendant's guilty plea to first-degree burglary. Third, the state remonstrates that the court did not abuse its discretion by denying defendant's motion for substitute counsel because the court "permissibly concluded that defendant's complaints about existing counsel were not legitimate."

        We review restitution orders for errors of law, and we are bound by the trial court's findings of fact if they are supported by evidence in the record. *State v. McClelland*, 278 Or App 138, 141, 372 P3d 614, *rev den*, 360 Or 423 (2016).

        ORS 137.106(1)(a) provides, in part:

        "When a person is convicted of a crime, or a violation as described in ORS 153.008, that has resulted in economic damages, the district attorney shall investigate and present to the court *** evidence of the nature and amount of the damages. *** If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount

---

[1] In acknowledging that *J. M. E.* currently controls this case, the state explains that it does not concede that *J. M. E.* was correctly decided when it concluded that CVCP's "regulatory regime did not dictate that CVCP pay medical expenses at or below market rates." The state, however, does not ask us to revisit *J. M. E.* in this case.

that equals the full amount of the victim's economic damages as determined by the court."

Under ORS 137.106(1)(a), there are three conditions that must be satisfied to order restitution: (1) criminal activities, (2) economic damages, and (3) a causal relationship between the two. *McClelland*, 278 Or App at 141. When the state is seeking restitution for medical costs, it must prove that the costs are reasonable. *Id.* at 143. Medical costs are reasonable if they are at, or below, the market rate for the respective costs. *State v. Workman*, 300 Or App 622, 623-24, 455 P3d 566 (2019). A hospital bill, alone, is insufficient to prove that the charges reflect the market rate; rather, some additional "testimony or evidence is required to support the reasonableness of the bill for the hospital or medical services." *Id.* at 623 (quoting *McClelland*, 278 Or App at 144).

Here, there is insufficient evidence in the record to support the reasonableness of the medical costs paid for by CVCP and therefore we accept the state's concession that *J. M. E.* controls the disposition of defendant's first argument. The affidavit executed by CVCP did not establish that the amounts paid were at, or below, the market rate. Accordingly, we reverse that portion of the restitution award.

Next, defendant argues that the trial court plainly erred by ordering him to pay restitution for B's medical costs and his mother's lost wages because those costs were not based on damages caused by any crime that he was convicted of or admitted to having committed. To qualify for plain-error review under ORAP 5.45, an error must be (1) an error of law; (2) obvious and not reasonably in dispute; and (3) apparent on the record without requiring the court to choose among competing inferences. *See, e.g.*, *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013); *Howard*, 292 Or App at 519. If an error meets that three-pronged test, we must decide whether to exercise our discretion to review the error and explain our reasons for doing so. *Vanornum*, 354 Or at 630; *see also Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 & n 6, 823 P2d 956 (1991) (explaining that a court's decision to review an unpreserved error "should be made with utmost caution" and identifying factors that the court may consider, including "the competing interests of

the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way").

Under ORS 137.106(1)(a), a "court may only order restitution for economic damages that were caused by the defendant's offense against the victim, or by defendant's other criminal activities." *State v. Kirkland*, 268 Or App 420, 424, 342 P3d 163 (2015). Criminal activities are defined as "any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant." ORS 137.103(1). Accordingly, "when determining what 'criminal activities' a defendant has committed, a court may consider only the crimes for which the defendant was convicted or other conduct that the defendant has admitted, provided that the defendant's admission is unequivocal and clearly reflected in the record." *Kirkland*, 268 Or App at 425.

In *Howard*, we held that it was plain error for the trial court to impose restitution for economic losses caused by additional crimes "for which defendant was not convicted and to which he did not admit." 292 Or App at 521. In that case, the defendant took jewelry from the home of his girlfriend's mother, and then pawned individual pieces on different dates. *Id.* at 518. The defendant pleaded guilty to theft-by-receiving on two separate dates; however, the trial court awarded restitution for losses caused by alleged thefts-by-receiving on several other dates, not just the two for which the defendant pleaded guilty. *Id.* at 521. Because the defendant limited his guilty plea to two specific dates, we concluded that the trial court plainly erred in imposing restitution for losses outside of those two dates included within his plea and exercised our discretion to correct the error. *Id.* at 521-22. This case, however, is distinguishable from *Howard*.

Here, defendant's guilty plea to first-degree burglary sufficiently encompassed the conduct that resulted in B's injuries. The indictment charging defendant with first-degree burglary alleged that "during the offense the defendant caused or attempted to cause physical injury to

another person." Defendant's act of using a crowbar against B is encompassed in that allegation and defendant did not contest that allegation or otherwise limit his guilty plea. Accordingly, the trial court did not plainly err by ordering defendant to pay restitution for B's and his mother's economic damages.[2]

Finally, we turn to defendant's contention that the trial court erred in denying his motion for substitute counsel. We review the trial court's ruling on a motion to substitute counsel for abuse of discretion. *State v. Olson*, 298 Or App 469, 472, 447 P3d 57 (2019). "A defendant moving to substitute court-appointed counsel 'has no right to new appointed counsel in the absence of a legitimate complaint about existing counsel.'" *Id.* (quoting *State v. Smith*, 339 Or 515, 523, 123 P3d 261 (2005)). A "legitimate complaint" about a court-appointed lawyer is "one that is based on an abridgment of a criminal defendant's constitutional right to counsel." *State v. Langley*, 314 Or 247, 258, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993). As such, "[a] simple loss of confidence or disagreement with counsel's approach to matters of strategy is not cause to substitute one appointed lawyer for another." *Id.* Further, the trial court "possesses discretion to determine the scope of the inquiry necessitated by a particular complaint." *Olson*, 298 Or App at 472.

Here, the concerns expressed by defendant amounted to a loss of confidence or disagreement with counsel's approach and did not rise to the level of a legitimate complaint about his counsel. At the restitution hearing, defendant argued that his counsel behaved in an unprofessional manner when advising him. Defendant also explained that counsel wanted him to sign the plea deal and agree to the restitution amount. The trial court adequately considered defendant's concerns and explained that it would be determining whether there would be a restitution award, not

---

[2] Defendant does not separately challenge the trial court's award of restitution for lost wages that B's mother incurred to take care of B after his injury. *See State v. Gerhardt*, 360 Or 629, 636, 385 P3d 1049 (2016) (holding that "restitution may be awarded under ORS 137.106 if [a] defendant's crime was a factual cause of the victim's economic damages and those damages were the reasonably foreseeable consequence of the crime"). Accordingly, we express no opinion on that issue.

defendant's counsel. Therefore, the trial court did not abuse its discretion when it denied defendant's motion for substitute counsel.

Accordingly, we reverse and remand the supplemental judgment with respect to the medical costs stemming from B's emergency department visit, and otherwise affirm.

Supplemental judgment reversed in part and remanded; otherwise affirmed.