ORTEGA, P. J.
*631 Defendant pleaded guilty to one count of first-degree aggravated theft and agreed to pay restitution related to all of the counts alleged in the indictment, which included four second-degree burglary counts that the state agreed to dismiss as part of the plea negotiations. After a restitution hearing, the trial court entered a supplemental judgment that imposed restitution in the amount of $206,393.61. On appeal, defendant challenges portions of the judgment, arguing that the court erred by awarding restitution of $5,000 to KDRV Broadcasting and $8,358.18 to its insurance company, Allianz Global Corporate & Specialty (Allianz), because defendant was not convicted of, and did not admit to, the conduct that caused damages to those entities.[1] We agree and reverse the portions of the supplemental judgment that awarded restitution to KDRV and Allianz.
The relevant facts are mostly procedural. A grand jury indicted defendant of four counts of second-degree burglary (Counts 1-4) and one count of first-degree aggravated theft (Count 5). Each of the burglary counts alleged that defendant, "unlawfully and knowingly enter[ed] or remain[ed] in a *** building located on BLM land, BLM Road 33-5-26, with the intent to commit the crime of theft therein." Count 1 specifically identified a burglary occurring "on or about June 14, 2013," in a Federal Aviation Administration building. Count 2 alleged a burglary "on or about June 21, 2013," in an Oregon Department of Transportation building. Count 3 alleged a burglary "on or about June 21, 2013," but did not identify a specific building; however, the parties agreed that it related to the "Pauletto Building."[2] Count 4 alleged a burglary "on or about June 21, 2013," in a building owned by PacifiCorp. Finally, the theft count alleged that defendant "on or between June 14 to June 21, 2013, *** did unlawfully and knowingly commit theft of property, of the total value of $10,000 or more, the property of another."
Defendant entered into a plea agreement with the state whereby he would plead guilty to first-degree aggravated *632 theft "as alleged" and pay "restitution." In exchange, the state would dismiss the burglary counts and recommend a downward dispositional departure sentence to probation. At the subsequent hearing on the plea agreement, the state explained the factual basis for defendant's guilty plea:
"This happened on BLM property. This codefendant and the other codefendants went-there are about five different buildings *359 on this out site-of this out site, and they went in and took-pushed down power poles and took the copper off that and entered the other building and took copper out of the buildings."
The court accepted defendant's guilty plea and ordered restitution in an amount to be determined at a later date.
Subsequently, the court held a restitution hearing. There was no dispute among the parties that, as part of his plea agreement, defendant had agreed to pay restitution related to all counts alleged in the indictment-i.e. , the theft count to which he pleaded guilty as well as the four burglary counts that were dismissed. As relevant on appeal, the state called the chief engineer for KDRV to testify. He testified that KDRV owns a building on BLM Road 33-5-26 and that KDRV suffered $13,358.18 in damage attributable to stolen fuel, damages to a generator, and replacement of a fuel tank. He indicated that Allianz had paid $8,358.18 of that amount and KDRV was responsible for a $5,000 deductible.
Defendant objected to any restitution award to KDRV or Allianz, arguing that neither was named as a victim in the indictment to any of the burglaries and that the theft count was inextricably related "to the four burglaries" alleged in Counts 1 through 4. In other words, defendant argued that the "victims" of the theft count were the same victims named in the indictment as to the four burglary counts and, because KDRV was not a named victim, it could not receive restitution. Further, defendant argued that nothing in the plea agreement or the record had notified defendant that the conduct to which he was pleading guilty included what he called "uncharged counts or uncharged conduct" related to KDRV.
*633 The state responded that the aggravated theft count was broad enough to "encompass[ ] broader conduct than Counts 1 through 4." In other words, the allegation in Count 5 that, "on or between June 14 to June 21, 2013, [defendant] did unlawfully and knowingly commit theft of property, of the total value of $10,000 or more, the property of another" was disassociated from the burglary counts and included the theft-related conduct for which KDRV sought restitution.
The court rejected defendant's argument, concluding that the state put on sufficient evidence "with regards to the amount in restitution owed to KDRV" and "that the location of their building burglarized was on King Mt. and that the lease was for building 33-5-26, as provided in the language of the charging instrument on Count 2."[3]
On appeal, defendant argues that, considering the indictment and the "factual basis" for his plea, nothing connected the damages suffered by KDRV and Allianz with the criminal conduct to which he pleaded guilty or otherwise admitted. In essence, he claims that the victims identified in each of the four burglary counts did not include KDRV or Allianz and the theft count related specifically to those burglary counts-i.e. , property taken from the four buildings owned by the parties identified in Counts 1 through 4. Accordingly, in defendant's view, he "did not admit to any conduct other than what was alleged in the indictment" and none of the conduct alleged in the indictment included conduct related to the losses suffered by KDRV. He also argues that the state failed to prove that the damage to KDRV property occurred "on or between June 14 to June 21, 2013," as alleged in the indictment. Accordingly, he asserts that the state failed to prove that the damages occurred on a date alleged in the indictment or otherwise covered by his plea agreement. Finally, defendant asserts that the factual basis *634 of defendant's guilty plea ("push[ing] down power poles and [taking] the copper off that and enter[ing] the other building and [taking] copper out of the buildings") did not include the conduct that caused KDRV's damages-i.e. , stealing fuel, damaging a fuel tank, and *360 stealing generator batteries and copper cables.
To summarize defendant's position, he "did not admit to any conduct other than what was alleged in the indictment" and none of the conduct alleged in the indictment included the losses related to KDRV's fuel, fuel tank, and generator. He further argues that "[a]lthough the damage to KDRV property occurred in the same general location as the charged conduct ***, the state presented no evidence as to when the damage to KDRV property occurred" and defendant only admitted to conduct occurring "on or between June 14 to June 21, 2013."
The state responds that defendant failed to preserve his argument regarding the time limitations in the indictment. See State v. Dorsey , 259 Or. App. 441, 446, 314 P.3d 331 (2013) (concluding that the trial court plainly erred by imposing restitution for thefts that occurred outside of the time alleged in the indictment). We agree that defendant did not raise that issue before the trial court; thus, it is not preserved and we do not address it.[4] As to defendant's remaining argument, the state asserts that the failure to name KDRV as a victim in the indictment does not preclude an award of restitution to that entity. Instead, in the state's view, the evidence adduced at the restitution hearing established a causal relationship between defendant's guilty plea to first-degree aggravated theft and KDRV's losses. In particular, the state points to the factual basis for defendant's guilty plea, as put on the record at the plea hearing, and testimony at the restitution hearing that KDRV owned a building that was related to defendant's first-degree aggravated theft conviction.
A trial court may order restitution "[w]hen a person is convicted of a crime *** that has resulted in economic damages[.]" ORS 137.106(1)(a). For the court to order *635 restitution, the state must prove, by a preponderance of the evidence, "(1) criminal activities, (2) economic damages, and (3) a causal relationship between the two."
State v. Kirkland , 268 Or. App. 420, 424, 342 P.3d 163 (2015) (internal quotation marks and brackets omitted). Whether those prerequisites have been met is ultimately a legal question, although "the answer to that question will necessarily depend on the trial court's factual findings." Id. at 424-25, 342 P.3d 163. "Criminal activities" are defined by statute as "any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant." ORS 137.103(1). Accordingly, "a defendant 'cannot be required to pay restitution for [economic] damages arising out of criminal activity for which he was not convicted or which he did not admit having committed.' " State v. Akerman , 278 Or. App. 486, 490, 380 P.3d 309 (2016) (quoting Dorsey , 259 Or. App. at 445-46, 314 P.3d 331 (brackets in Akerman ) ). Any admission must be "unequivocal and clearly reflected in the record." Kirkland , 268 Or. App. at 425, 342 P.3d 163.
To illustrate those principles, in Dorsey , the defendant had admitted in her plea petition to stealing more than $1,000 from her employer between July 21 and August 5. 259 Or. App. at 442, 314 P.3d 331. After accepting the defendant's guilty plea, the court imposed restitution based on her employer's testimony that money went missing during the entire 85 days of the defendant's employment. Id. at 442-43, 314 P.3d 331. We reversed the restitution award, noting that "[the d]efendant was not convicted for, and did not admit to, thefts that took place other than those committed from July 21 to August 5." Id . at 446, 314 P.3d 331. Accordingly, the defendant's "criminal activities" did not include conduct outside of that time frame, and the court lacked authority to award restitution for conduct that occurred outside of dates alleged in the indictment.
Similarly, in State v. Thornton , 103 Or. App. 296, 298, 796 P.2d 1252 (1990), we held that the defendant could not be ordered to pay restitution for a stolen car stereo when he had been convicted only of theft for stealing cash and tires from the service station where he worked. We noted that he had not been charged with theft of the car stereo and that he had not admitted to taking it. Accordingly, we held that the trial court could not *361 impose restitution for the *636 missing stereo because "theft of the car stereo is not a criminal activity attributable to defendant."[5] Id.
In this case, the record fails to establish that the losses claimed by KDRV are attributable to the "criminal activities" to which defendant admitted. First, it is undisputed that none of the burglaries charged in Counts 1 through 4 involved KDRV's building. As the state acknowledged at the restitution hearing, the indictment explicitly linked the burglary counts to buildings owned by entities other than KDRV. Further, nothing in the plea agreement and nothing in the "factual basis" for defendant's guilty plea indicated that the conduct being charged in the four burglary counts included conduct related to KDRV's property. Accordingly, to the extent that defendant admitted to the conduct underlying the dismissed burglary counts by agreeing to pay restitution for those counts, that admission did not "unequivocally" include the activities for which the court awarded restitution to KDRV and Allianz.
Second, there is no indication that the crime for which defendant was convicted-i.e. , first-degree aggravated theft-included theft of the property of KDRV. Although it is true that the state generally alleged that defendant committed the theft of "property of another," that allegation and the specific conduct to which defendant pleaded guilty is informed by the record. See State v. Parsons , 287 Or. App. 351, 357, 403 P.3d 497, adh'd to as modified on recons. , 288 Or. App. 449, 403 P.3d 834 (2017), rev. den. , 362 Or. 545, 414 P.3d 405 (2018) (noting that the defendant's second-degree criminal mischief conviction was predicated on the defendant's plea agreement, *637 in which he admitted intentionally damaging property, but no other criminal conduct). Here, nothing in the indictment, the factual basis for defendant's guilty plea, or the plea agreement indicated that, by pleading guilty to first-degree aggravated theft, defendant was admitting that the "property of another" included KDRV's property. That is, there is nothing in the record which indicates that defendant pleaded guilty to conduct that specifically included theft of KDRV's property. In contrast, the record does allow the conclusion that defendant's conviction for theft of "property of another" included theft from the four entities identified in the dismissed burglary counts. That much is clear from the face of the indictment, the factual basis for the guilty plea, and the plea agreement. In the absence of any such link to KDRV, the "criminal activities" prerequisite was not fulfilled, and the court lacked authority to impose restitution for conduct related to KDRV's property.[6] Accordingly, the court erred in doing so, and we reverse the portions of the supplemental judgment that imposed restitution as to KDRV and Allianz.
Portions of supplemental judgment awarding restitution to KDRV Broadcasting and Allianz Global Corporate & Specialty reversed; otherwise affirmed.

Defendant does not challenge the remainder of the restitution awarded to other victims.

The owners of the Pauletto Building did not seek restitution.

The court's reference to the "lease" for "building 33-5-26" is at odds with the record, which reflects that KDRV leased the land from the Bureau of Land Management (BLM) and owned "a building" that sits on BLM Road 33-5-26. Moreover, Count 2 specifically alleged a burglary at an Oregon Department of Transportation building located on BLM Road 33-5-26 and does not mention KDRV. Nevertheless, neither party addresses the apparent discrepancy between the court's order and the record; thus, we do not discuss it further.

Defendant does not ask for plain error review as to that argument.

In Thornton , we acknowledged our decision in State v. Doty , 60 Or. App. 297, 653 P.2d 276 (1982), in which the defendant was convicted of theft of items worth less than $200, but we upheld the trial court's imposition of $2,000 in restitution to account for the total value of items stolen from the home. We explained that, in Doty , the defendant "had admitted kicking in the victim's door and stealing several items but had claimed that someone else must have taken the rest. We held that the defendant's criminal activities caused the loss of all the items, because, by kicking in the door, he had created free access to the house for the hypothetical second thief." Thornton , 103 Or. App. at 298, 796 P.2d 1252. Accordingly, Doty dealt with whether a causal relationship existed between the defendant's criminal activities and the victim's economic damages. Because the defendant's criminal activities were a "but for" cause of all of the victim's economic damages, restitution was appropriate. In this case, the dispositive issue is the scope of the criminal activities contained within defendant's conviction or admission.

To be clear, the causal relationship between defendant's "criminal activities" and the victim's economic damages is not at issue in this case, so cases addressing that issue are inapposite.