Argued and submitted August 23, 2019, affirmed May 6, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ZACHARY MICHAEL LOBUE,
*Defendant-Appellant.*

Lane County Circuit Court
17CR64289; A166681

466 P3d 83

Defendant appeals a supplemental judgment imposing restitution after his conviction on a guilty plea for one count of unauthorized use of a vehicle, assigning error to the trial court's award of restitution for damages that he asserts were not caused by the crime of conviction and to which he did not admit on the record. Defendant further assigns error to the admission of evidence of damages in support of the award of restitution and to the court clerk's imposition of collection fees and a payment schedule for the restitution. *Held*: The evidence supports the trial court's finding that defendant caused the damages to the vehicle, and the court therefore did not err in taking those damages into account in determining the amount of restitution. Repair estimates submitted by the state and the victim were admissible in the restitution hearing to establish damages caused by defendant's criminal conduct. The trial court did not exceed its authority by including in the judgment an order authorizing the court to add collection fees and assessments without further notice and directing the clerk of the court to include a collection fee and to schedule payments under ORS 161.675.

Affirmed.

Charles M. Zennaché, Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Affirmed.

**ARMSTRONG, P. J.**

Defendant appeals a supplemental judgment imposing restitution after his conviction on a guilty plea for one count of unauthorized use of a vehicle, ORS 164.135.[1] Defendant assigns error to the trial court's award of restitution for damages that he asserts were not caused by the crime of conviction and to which he did not admit on the record.[2] Defendant further assigns error to the admission of evidence of damages in support of the award of restitution and to the court clerk's imposition of collection fees and a payment schedule for the restitution. We conclude that the trial court did not err and affirm.

We begin with a discussion of the relevant statutory context for imposition of restitution in criminal cases. ORS 137.106(1)(a) requires a trial court to award restitution when a person is convicted of a crime that the court finds resulted in economic damages to the victim. *State v. Parsons*, 287 Or App 351, 356, 403 P3d 497, *adh'd to as modified on recons*, 288 Or App 449, 403 P3d 834 (2017). To support an award of restitution, the state bears the burden to prove by a preponderance of the evidence that the defendant's criminal activities caused the victim's economic damages. *Id*. at 356-57; *see also State v. McDonald*, 291 Or App 629, 634-35, 422 P3d 357 (2018).

Restitution is awarded for damages caused by a defendant's criminal activities for which the defendant has been convicted or to which he has admitted. *State v. Kirkland*, 268 Or App 420, 425, 342 P3d 163 (2015). "Criminal activities" are defined in ORS 137.103(1) as "any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant."[3]

---

[1] ORS 164.135(1) provides, in part:

"A person commits the crime of unauthorized use of a vehicle when:

"(a) The person takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner[.]"

[2] Defendant also pleaded guilty to possession of methamphetamine; there are no issues on appeal relating to that conviction.

[3] ORS 137.106 formerly gave courts discretion to order a defendant to make restitution as part of a sentence for "pecuniary damages" caused by the defendant's "criminal activities":

A defendant cannot be required to pay restitution for economic damages resulting from criminal activities for which he was not convicted or to which he did not admit. *State v. Partain*, 298 Or App 449, 452, 446 P3d 561 (2019) (it is error to impose restitution in a case based on conduct that is not part of the crime of conviction and that the defendant did not admit to committing); *State v. Dorsey*, 259 Or App 441, 445-46, 314 P3d 331 (2013). A trial court may not impose restitution based on criminal activities that occurred outside the time period covered by a defendant's plea agreement. *State v. Howard*, 292 Or App 517, 523, 424 P3d 803 (2018); *State v. Muhammad*, 265 Or App 412, 414, 335 P3d 1281 (2014).

A defendant's criminal activities must be a "but-for" cause of the victim's damages. *Howard*, 292 Or App at 522; *see State v. Akerman*, 278 Or App 486, 490, 380 P3d 309 (2016) (record must support a nonspeculative inference that there is a causal relationship between defendant's criminal activities and victim's economic damages).

The imposition of restitution is a part of sentencing. *State v. Dillon*, 292 Or 172, 178, 637 P2d 602 (1981). In determining whether a defendant has engaged in criminal activity that resulted in a victim's economic damage, the court may consider any evidence that the court can consider at a sentencing hearing. *State v. Sigman*, 141 Or App 479, 483, 919 P2d 45 (1996).

---

"(1) When a person is convicted of criminal activities, *** which have resulted in pecuniary damages, *** in addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim."

ORS 137.106 (1997). Courts referred to ORS 137.103(1) for the definition of "criminal activities." *State v. Dillon*, 292 Or 172, 180-81, 637 P2d 602 (1981); *State v. Seggerman*, 167 Or App 140, 145, 3 P3d 168 (2000) ("Defendant cannot be required to pay restitution for pecuniary damages arising out of criminal activity for which he was not convicted or which he did not admit having committed."). The legislature amended ORS 137.106(1) in 1999 to require the imposition of restitution for the full amount of a victim's "economic damages" resulting from the defendant's "crime." Or Laws 1999, c. 1051, § 124. Our case law continues to refer to the definition of "criminal activities" in ORS 137.103(1) for the scope of conduct subject to restitution. *Kirkland*, 268 Or App at 421. That reference continues to be appropriate, because ORS 137.103(4)(b) defines a victim as a person "whom the court determines has suffered economic damages as a result of the defendant's *criminal activities*." (Emphasis added.)

We review whether a trial court has complied with the requirements for imposing restitution for legal error. *State v. Herfurth*, 283 Or App 149, 152, 388 P3d 1104 (2016), *rev den*, 361 Or 350 (2017). We are bound by the trial court's findings if they are supported by any evidence in the record. *State v. Pumphrey*, 266 Or App 729, 730, 338 P3d 819 (2014), *rev den*, 357 Or 112 (2015). If the trial court did not make express findings on a disputed fact, we assume that the court implicitly found the facts consistent with the judgment entered. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993) ("If findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion."). Accordingly, we summarize the relevant facts consistent with the trial court's explicit and implicit findings.

Someone stole the victim's white 1986 Toyota pickup truck on March 6, 2017. While on patrol early in the morning on March 23, 2017, Senior Trooper Ellis saw defendant looking under the hood of a black 1986 Toyota pickup parked on the side of the road. Later that morning, Ellis stopped defendant in the same vehicle for traffic violations. Defendant did not have a registration for the pickup, and Ellis noticed that it was in poor condition. The pickup had a "hasty, unprofessional paint job," and its siderails and tailgate had been removed. Ellis smelled fresh paint and noticed paint overspray on the pickup's front license plate. Defendant told Ellis that he had not registered the pickup because he used it for off-road driving and that he had painted it with a spray can. The bed of the pickup was loaded with junk covered by a tarp.

Ellis suspected that the vehicle was stolen, determined that the pickup's license plates did not match its VIN, and learned from defendant that the plates were registered to a vehicle owned by defendant's girlfriend. The pickup's VIN belonged to the victim's white 1986 Toyota pickup that had been reported stolen on March 6. Ellis saw a large number of filed-down keys inside the pickup, including a key from a Toyota vehicle.

Ellis arrested defendant, and defendant ultimately pleaded guilty to unauthorized use of a vehicle. The charging instrument alleged that defendant, "on or about March 23, 2017, * * * did unlawfully and knowingly take, operate, exercise control over, ride in or otherwise use a vehicle * * * without the consent of the owner."

At the restitution hearing, the victim testified that he had purchased the pickup in 2014 for $2,700 and had maintained it, and that it was in good condition at the time that it was stolen. Ellis described the damage to the pickup on the day that it was recovered and testified that people often alter the appearance of a vehicle to try to conceal that it is stolen. The victim submitted estimates for the pickup's repair costs exceeding $3,000, including repair of a cracked windshield, wheel alignment, removal of a broken key in the ignition, replacement of a damaged clutch, replacement of the pickup's bed, and restoration of the paint job. The state presented evidence that the vehicle's high market value was $2,800 on the day that it was stolen. Because the repair costs would exceed the high market value, the state sought as restitution only the market value plus the cost to tow the vehicle the day that it was recovered. *See State v. Rasool Islam-Islam*, 359 Or 796, 807, 377 P3d 533 (2016) (the measure of restitution for a stolen item is the fair market value of the item when it was stolen); *State v. Onishchenko*, 249 Or App 470, 477, 278 P3d 63, *rev den*, 352 Or 378 (2012) (measure of damages for restitution is reasonable market value of the goods converted at the time and place of conversion).

Defendant asserted that, because he had pleaded guilty to unauthorized use of the vehicle on a specific date—March 23, 2017—and because the state had not presented evidence that the vehicle's damages occurred on that date, the only restitution that could be awarded was for the cost of towing. Defendant further contended that his statement to Ellis about having painted the pickup could not be considered as an admission of criminal activity, because it was not an unequivocal admission made on the record with the formalities of a guilty plea.

The trial court noted that the charging instrument had alleged that defendant did "take" the vehicle and that

defendant's guilty plea necessarily included an admission to that allegation. The court reasoned that, based the large number of broken keys found in the vehicle, including a broken key in the pickup's ignition, defendant "probably took" the pickup. But the court concluded that it did not need to make a finding that defendant stole the vehicle in order to award restitution. The court attributed the vehicle's damages to defendant's unlawful possession and use of the vehicle. The court explicitly rejected defendant's contention that the statement made to Ellis that he had painted the pickup could not be considered in assessing restitution because it had not been made on the record in open court. The court concluded that, because the cost to repair the vehicle exceeded its fair market value, restitution was limited to the pickup's fair market value of $2,800, plus the towing cost.

On appeal, the issue is whether the damage to the vehicle occurred as a result of defendant's criminal activities as defined in ORS 137.103(1) ("[A]ny offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant."). Defendant does not dispute that the vehicle was in damaged condition while in his possession and that the victim suffered economic loss. But, with the exception of the towing expense, he contends that there is no evidence that the damages that the court considered in awarding restitution were caused by the crime of conviction or criminal activity to which defendant pleaded guilty, which was driving the vehicle on March 23. The state responds that the evidence permits the inference that defendant caused the damages to the vehicle when he possessed and used it, including on March 23.

In reviewing the sufficiency of the record to support the trial court's finding of causation, we view the evidence in the light most favorable to the state. *Kirkland*, 268 Or App at 421. The trial court's findings will be upheld if supported by any evidence. *Pumphrey*, 266 Or App at 730. We conclude that there is evidence in support of the court's findings.

As an initial matter, we reject defendant's contention that his statement to Ellis that he had spray-painted the pickup could not be considered under ORS 137.103, because it was not an unequivocal admission with the formalities

of a guilty plea. Even if it was not a formal admission of criminal guilt, defendant's statement to Ellis that he had painted the pickup was evidence that the court could consider in determining whether the damage to the vehicle occurred during defendant's unauthorized use. *See State v. Rosette*, 289 Or App 581, 591, 410 P3d 362 (2017) (in sentencing the defendant for first-degree theft of a Bobcat, trial court did not err in awarding restitution for damages that occurred during the time period the defendant admitted the Bobcat was in his possession). Defendant's statement, along with Ellis's description of the vehicle's appearance and the smell of fresh spray paint is evidence from which it could be inferred that defendant spray painted the vehicle.

There is evidence that defendant damaged the pick-up in other ways. Ellis testified that defendant told him he had been driving the pickup off-road, which puts stress on a vehicle and could have damaged the clutch. Defendant told Ellis that he suspected the pickup was stolen. Ellis, who observed the fresh paint, the altered pickup bed, and the switched license plates, testified, based on his experience, that he thought the vehicle had been stolen and that people often alter the appearance of a vehicle to conceal that it may be stolen. That is some evidence from which the trial court could make a nonspeculative inference that defendant altered the vehicle's appearance at some time while it was in his possession.

Contrary to defendant's contention, the state was not required to present evidence of the specific date on which the vehicle's damages occurred. The evidence allows a possible inference that the damages occurred during defendant's possession and use of the vehicle to which he pleaded guilty, including on March 23. Restitution for those damages does not impose liability on defendant for criminal conduct to which he did not plead. *Cf. Dorsey*, 259 Or App at 443 (restitution could not be imposed for discrete instances of theft that had occurred outside of the 16 days during which the defendant admitted that the criminal conduct was ongoing); *State v. Howett*, 184 Or App 352, 358, 56 P3d 459 (2002) (restitution could not be imposed for discrete instances of theft that occurred outside of the dates stated in the indictment

and to which the defendant pleaded guilty). We conclude that the evidence supports the trial court's finding that defendant caused the damages to the vehicle and that the court did not err in taking those damages into account in determining the amount of restitution.

Defendant raises several assignments of error relating to the state's evidence of repair costs and the vehicle's estimated value, contending that the evidence was hearsay and should not have been admitted. The rules of evidence do not apply to restitution hearings, which are a part of criminal sentencing, *Dillon*, 292 Or at 180 ("The procedural requirements for imposition of a sentence of restitution are those ordinarily associated with sentencing."); *Sigman*, 141 Or App at 483, and hearsay statements may be admitted if accompanied by "some minimal indicia of reliability." *United States v. Petty*, 982 F2d 1365, 1369, *amended by* 992 F2d 1015 (9th Cir 1993). Defendant contends on appeal that the value estimate lacks minimal indicia of reliability. Because defendant did not make that argument below, we decline to consider it. ORAP 5.45(4).

Defendant contends further that, in the absence of an ability to cross-examine the persons who made them, admission of the repair bills and value estimate violated his right to confrontation under the Due Process Clause of the Fourteenth Amendment. He contends that a restitution hearing, like a probation revocation proceeding, involves a determination of discrete factual issues and therefore implicates a due process right to confront witnesses. He contends that, as in the probation revocation setting, hearsay evidence should be admissible in restitution hearings only after balancing the defendant's confrontation right against the government's reason for denying it. *See State v. Wibbens*, 238 Or App 737, 243 P3d 790 (2010) (adopting Ninth Circuit balancing test for admissibility of hearsay evidence in probation revocation proceeding, weighing probationer's interest in confrontation against government's good cause for denying it).

The United States Supreme Court has held that due process does not prevent a trial court from imposing a sentence based on hearsay and that a defendant has no due

process right to confrontation at sentencing proceedings. *Williams v. New York*, 337 US 241, 246, 69 S Ct 1079, 93 L Ed 1337 (1949) (courts enjoy "wide discretion in the sources and types of evidence used *** in determining the kind and extent of punishment to impose within limits fixed by law," including out-of-court affidavits). The Ninth Circuit has not extended the rationale that we adopted in *Wibbens* concerning probation revocation proceedings to confrontation rights in the sentencing context, *see United States v. Littlesun*, 444 F3d 1196, 1200 (9th Cir 2006) (rejecting extension of confrontation rights to sentencing), and we also decline to do so. The personal liberty interests at stake in a probation revocation proceeding are not implicated in setting restitution as a part of sentencing. *See Morrissey v. Brewer*, 408 US 471, 482-83, 92 S Ct 2593, 33 L Ed 484 (1972) (explaining that due process requirements, including confrontation rights, for parole revocation hearings, stem from the parolee's liberty interest). The trial court did not err in admitting the state's evidence to establish the amount of restitution.

ORS 161.675(1) tolls enforcement of monetary obligations for incarcerated defendants unless the court makes findings about the defendant's ability to pay:

"(1)  When a defendant, as a part of a sentence or as condition of probation or suspension of sentence, is required to pay a sum of money for any purpose, the court may order payment to be made immediately or within a specified period of time or in specified installments. If a defendant is sentenced to a term of imprisonment, any part of the sentence that requires the payment of a sum of money for any purpose is enforceable during the period of imprisonment if the court expressly finds that the defendant has assets to pay all or part of the amounts ordered."

Defendant contends that the trial court exceeded its authority by (1) including in the judgment an order authorizing the court to add collection fees and assessments without further notice and (2) directing the clerk of the court to include a collection fee and to schedule payments under ORS 161.675. The court did not exceed its authority. The court is authorized by ORS 1.202 to add fees for collecting monetary obligations without further notice to a defendant, if the court gives the defendant "a period of time in which to pay the

obligation."[4] Additionally, for the reasons explained in *State v. Foos*, 295 Or App 116, 119, 433 P3d 493 (2018) ("When a judgment directs a clerk of the court to act pursuant to a statute, we assume the clerk will act in accordance with that statute."), we conclude that the court did not err in directing the clerk of the court to include a collection fee and to schedule payments under ORS 161.675.[5]

Affirmed.

---

[4] ORS 1.202(1) provides:

"All circuit courts and appellate courts of this state, and all commissions, departments and divisions in the judicial branch of state government, shall add a fee of not less than $50 and not more than $200 to any judgment that includes a monetary obligation that the court or judicial branch is charged with collecting. The fee shall cover the cost of establishing and administering an account for the debtor and shall be added without further notice to the debtor or further order of the court. The fee shall be added only if the court gives the defendant a period of time in which to pay the obligation after the financial obligation is imposed. Fees under this subsection shall be deposited in the General Fund."

[5] If, as defendant contends, the clerk has taken action inconsistent with ORS 161.675, that is a matter to be taken up in the circuit court. *State v. Ciraulo*, 301 Or App 849, 459 P3d 960 (2020); *State v. Saunders*, 298 Or App 291, 447 P3d 60 (2019).