Submitted September 27; supplemental judgment reversed and remanded, remanded for resentencing, otherwise affirmed December 7, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JACOB ALLEN MOTHERSHED,
*Defendant-Appellant.*

Washington County Circuit Court
20CR43898; A175764

522 P3d 921

Defendant was convicted of unauthorized use of a vehicle, ORS 164.135, based on his purchase of a stolen motorcycle that he had reason to believe was stolen. As part of his sentence, defendant was ordered to pay restitution to the motorcycle owner for damage to the motorcycle. On appeal, defendant argues that the evidence was legally insufficient to establish that he caused the damage and therefore insufficient to support the restitution award. *Held*: The trial court erred in ordering defendant to pay restitution for the damage to the motorcycle, because the evidence did not permit a reasonable inference that defendant caused the damage.

Supplemental judgment reversed and remanded; remanded for resentencing; otherwise affirmed.

Oscar Garcia, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emily P. Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

AOYAGI, J.

Supplemental judgment reversed and remanded; remanded for resentencing; otherwise affirmed.

**AOYAGI, J.**

Defendant was convicted of unauthorized use of a vehicle (UUV), ORS 164.135, and, as part of his sentence, ordered to pay $1,854.74 in restitution. In his sole assignment of error on appeal, defendant challenges the portion of the restitution order requiring him to pay $1,085.54 for damage to the vehicle. Defendant contends that, on this record, the state failed to prove that he (rather than the original thief) caused the damage. We agree and, accordingly, reverse that portion of the restitution order.

## FACTS

We review a restitution order for errors of law. *State v. Thorpe*, 217 Or App 301, 303, 175 P3d 993 (2007). We are bound by the trial court's factual findings if there is any evidence in the record to support them. *State v. Pumphrey*, 266 Or App 729, 730, 338 P3d 819 (2014), *rev den*, 357 Or 112 (2015). Otherwise, in assessing the legal sufficiency of the evidence to support a restitution award, we view the evidence in the light most favorable to the state, including reasonable inferences. *State v. Aguirre-Rodriguez*, 367 Or 614, 620, 482 P3d 62 (2021). We state the facts accordingly.

On or about July 2, 2020, someone stole the victim's motorcycle, a 2009 Yamaha R6. On July 9, 2020, defendant purchased the motorcycle from B for $2,000. In the process, defendant obtained information that suggested that the motorcycle could be stolen. Among other things, defendant was aware that the ignition was damaged, which information he tried to use to get the price down; defendant arranged the transaction on Facebook Messenger, and there were numerous messages on B's Facebook page to the effect that B was a notorious vehicle thief; when defendant asked B for the title in a Facebook message, shortly after picking up the motorcycle, B replied, "Eat a dick punk"; and, when defendant went to see B the following day, because B had said his girlfriend had the title, B came after defendant with a knife, which defendant reported to the police.

On July 31, 2020, a police officer stopped defendant after observing him doing a "wheelie" on the motorcycle, which we understand to mean driving on the back wheel

with the front wheel in the air. The police determined that the motorcycle was stolen and confiscated it. The victim subsequently identified several types of damage done to the motorcycle after it was stolen: (1) the ignition had been removed by force and the motorcycle hot-wired to start with a paper clip; (2) the brakes were completely worn down to the metal, and there was damage to the front fairing, which was consistent with someone using excessive braking force of the sort that would cause the motorcycle to come up on its front wheel; (3) the handlebar grips had been replaced; and (4) there was right-side damage consistent with the motorcycle having fallen on its side.

Defendant pleaded guilty and was convicted of misdemeanor UUV for his use of the stolen motorcycle. The factual basis for the conviction, as stated in his plea petition, was that defendant "unlawfully and knowingly took and exercised control over a motorcycle without consent of the owner [E] while being aware of and consciously disregarding a substantial and unjustifiable risk that the owner did not consent."

As part of his sentence, defendant was ordered to pay restitution, and the court held a hearing to determine the amount. As relevant here, the victim testified regarding the damage to the motorcycle and the costs to repair it, and defendant testified to the condition of the motorcycle when he purchased it and denied causing any damage himself. The state then argued that the victim was entitled "to economic damages to get him back into the place he was before the crime occurred," even if it was "impossible to say" when exactly the damage occurred, and that having "made the reckless decision to take ownership of and purchase this stolen vehicle," defendant should be held responsible for any damage. The state also pointed out that defendant had the motorcycle for 21 of the 28 days that it was out of the victim's possession and that he had been observed doing a wheelie, which the state characterized as "extremely reckless and dangerous" driving. Defendant countered that the state was required to prove that his criminal activities caused the damage to the motorcycle, cited cases on the but-for causation requirement, and asserted that the state had failed to prove causation.

Ultimately, the trial court ordered defendant to pay $1,854.74 in restitution, which consisted of $1,085.54 for damage to the motorcycle—specifically the ignition and the brakes—and $769.20 for the victim's lost wages. The court explained that it was ordering defendant to pay restitution for the damage to the motorcycle because defendant "did plead guilty to the charge itself," that defendant "had possession and control of this vehicle," and that it was a "reasonable inference" that "there was some damage done while in his possession." The court noted defendant's testimony that he did not cause any damage but stated, "I mean, he pled guilty." The court acknowledged the possibility of making a credibility determination but declined to make one, instead stating, "[T]he problem is that he pled guilty to this crime of possession of the vehicle. And there's a reasonable inference that can be made that he was responsible—or that there was damage done, or that he's responsible for it. You know, based on the crime itself, taking possession of this vehicle." The court continued, "So I do find that, based on the charge itself, based on his possession of this vehicle, controlling it, apparently doing wheelies on it, there's a reasonable inference that can be made that he is responsible for and should be held liable for some of this damage, based on the restitution statute." The court entered a supplemental judgment reflecting its restitution award.

On appeal of the supplemental judgment, defendant assigns error to the restitution order, challenging only the portion awarding $1,085.54 for damage to the motorcycle's ignition and brakes. He does not challenge the lost-wages portion.

## ANALYSIS

A trial court may order restitution upon proof of "(1) criminal activities, (2) economic damages, and (3) a causal relationship between the two." *State v. Smith*, 291 Or App 785, 788, 420 P3d 644 (2018); ORS 137.106(1)(a).[1] "'Criminal activities' means any offense with respect to which the defendant is convicted or any other criminal conduct admitted by

---

[1] All references herein are to the current statutes. After 2020, one statute discussed herein was renumbered, and some statutes discussed herein were amended in ways immaterial to this appeal.

the defendant." ORS 137.103(1); *see also State v. Howett*, 184 Or App 352, 356, 56 P3d 459 (2002) ("[W]hen a person is convicted of a crime, the trial court may impose restitution for damages recoverable in a civil action arising out of the facts or events constituting that crime or any other criminal conduct admitted by the defendant."). "Economic damages" includes "reasonable costs incurred for repair or for replacement of damaged property." ORS 31.705(2)(a).

This case turns on the third element—the causal relationship between defendant's criminal activities (unlawful use of the motorcycle from July 9 to July 31[2]) and the victim's economic damages (the cost to repair the motorcycle's ignition and brakes). A defendant cannot be ordered to pay restitution for economic damages "arising out of criminal activity for which he was not convicted or which he did not admit having committed." *State v. Kirkland*, 268 Or App 420, 425, 342 P3d 163 (2015). Rather, ORS 137.106(1)(a) permits an award of restitution only if "a trial court can determine, from the record and the defendant's conviction, that the defendant committed the act that resulted in the victim's damages." *State v. Andrews*, 366 Or 65, 76, 456 P3d 261 (2020). "A defendant's criminal activities must be a 'but-for' cause of the victim's damages." *State v. Lobue*, 304 Or App 13, 15, 466 P3d 83, *rev den*, 367 Or 257 (2020).

In *State v. Lefthandbull*, 306 Or 330, 332, 758 P2d 343 (1988), the defendant pleaded guilty to attempting to manufacture methamphetamine, and the trial court ordered him to pay restitution to the owner of a house in which methamphetamine was manufactured, for damage to the house. The Supreme Court reversed the restitution order, because the state had failed to show "that the pecuniary harm to the owners of the house resulted from defendant's attempt to manufacture methamphetamine or from other criminal conduct that he may have admitted." *Id*. In *State v. Potter*, 103 Or App 463, 465-66, 798 P2d 690 (1990), the defendant was convicted of UUV based on his use of a stolen car that someone else gave him, the trial court ordered him

---

[2] The factual basis for defendant's guilty plea was that he unlawfully used the motorcycle "on July 31, 2020," which was consistent with the charge in the indictment and the judgment of conviction. However, at the restitution hearing, defendant admitted to using the motorcycle from July 9 to July 31.

to pay restitution for the cost to repair a dent present on the car when it was recovered, and we reversed the restitution order because the state had not established that the damage "occurred during or after the time that defendant" used the car or that it "resulted from" his criminal activity. In *State v. Riekens*, 301 Or App 447, 449, 457 P3d 347 (2019), *rev'd on other grounds*, 366 Or 492, 464 P3d 429 (2020), the defendant was convicted of second-degree theft for taking a stolen bicycle that he found damaged and leaning against some shrubs. The trial court determined that the victim suffered $1,700 in economic damages and "split" that amount between the original thief and the defendant, ordering the defendant to pay $850 to the victim (partially as restitution and partially as a compensatory fine). *Id.* at 452. We reversed, concluding that the evidence was insufficient to establish that the defendant caused the damage to the bicycle. *Id.* at 457.

By contrast, in *Lobue*, the defendant pleaded guilty to UUV based on his unlawful use of a truck several weeks after it was stolen. 304 Or App at 15, 19. When police recovered the truck from the defendant, it had a "hasty, unprofessional" paint job and a bed full of junk, and it was in poor condition. *Id.* at 16. Damage to the truck's paint, bed, wheel alignment, clutch, and windshield exceeded the truck's fair market value. *Id.* at 17. The trial court ordered the defendant to pay restitution in an amount equal to the fair market value. *Id.* at 18. We affirmed, because the record allowed a reasonable inference that the defendant had caused the damage to the truck himself, including by spray painting it to disguise that it was stolen and by using the truck for "off-road" driving. *Id.* at 18-19.

In this case, defendant was convicted of UUV based on his purchasing a stolen motorcycle approximately one week after it was stolen, with a reckless state of mind as to whether it was stolen, and then using it for three weeks before it was recovered by police during a traffic stop. It is undisputed that defendant was not the original thief. On appeal, defendant argues, as he did in the trial court, that the state failed to show that he personally caused any damage to the motorcycle after purchasing

it.[3] We agree. Because restitution was ordered only for damage to the ignition and the brakes, we limit our discussion to that damage.

As a preliminary matter, we note that some of the trial court's comments seem to put undue emphasis on the fact of the UUV conviction itself and perhaps suggest that being in the post-theft chain of possession is enough to give rise to responsibility for post-theft damage. Although the state does not pick up those threads on appeal, two observations are merited to avoid any confusion. One is that causing damage to a vehicle is not an element of UUV. *See* ORS 164.135. A person who commits UUV may be ordered to pay restitution for damage to the vehicle but, as previously described, only when that person's criminal activities are a but-for cause of the damage. Circumstances beyond the mere fact of the person having committed UUV are therefore necessary. As for being in the chain of post-theft possession, we have previously explained that a person who commits UUV may sometimes be liable for damage that occurs *after* the vehicle leaves their possession. For example, in *State v. Stephens*, 183 Or App 392, 394-97, 52 P3d 1086 (2002), we affirmed a restitution order attendant to a UUV conviction where, after committing UUV, the defendant left the vehicle in a friend's yard, where someone stole its tires and wheels. The "defendant's acts of possession and his exercise of control over the [vehicle], which included leaving it unprotected in his friend's yard, facilitated the theft." *Id*. at 397. However, to extend that example, it does not follow that someone who steals the tires off a stolen vehicle after finding it abandoned would be liable for ignition damage caused by the original thief.

We turn now to the state's arguments. As it did below, the state argues that the fact that defendant had the motorcycle for three weeks, whereas the original thief (or

---

[3] We reject the state's contention that defendant did not adequately preserve his claim of error for appeal. Whether defendant caused the damage to the motorcycle was a significant issue at the restitution hearing. Defendant argued and cited cases for the proposition that the state had to prove that his criminal activities caused the damage to the motorcycle, and he asserted that "they haven't been able to do that." The issue was adequately preserved for appeal.

others) had it for only one week, allows an inference that the damage was caused during the period that defendant possessed it. We disagree. A week is long enough that the mere fact that defendant had the motorcycle longer—three weeks—does not give rise to a reasonable inference that the damage occurred while defendant had the motorcycle.

We next consider evidence regarding the specific damage for which restitution was ordered. Regarding the ignition, the only evidence the court heard was that the ignition was already damaged when defendant purchased the motorcycle. The state as much as admits that there is no evidence that defendant damaged the ignition. That leaves the brakes. The only fact potentially linking defendant to the brake damage is the single wheelie that he was seen doing on July 31. In his testimony, defendant admitted to doing a wheelie that day, but denied that it was something that would damage the motorcycle. It is not obvious how driving briefly on the back wheel of a motorcycle would cause severe brake damage, and the state offered no evidence to establish a causal connection.[4] Rather, as we understand it, the state's theory was (and is) that, because defendant admitted to doing a wheelie on July 31, it is reasonable to infer that he is generally a reckless and dangerous motorcycle driver, and therefore reasonable to infer that he did *other* things that damaged the brakes. That theory requires too much stacking of inferences to constitute a reasonable inference. *See State v. Bivins*, 191 Or App 460, 468, 83 P3d 379 (2004) (evidence is legally insufficient to support an inference when it "requires the stacking of inferences to the point of speculation").

In sum, the evidence was legally insufficient to establish that defendant's criminal activities (unlawful use of the motorcycle from July 9 to July 31) caused the victim's economic damages (the cost to repair the motorcycle's ignition and brakes). It follows that the trial court erred in ordering defendant to pay $1,085.54 for damage to the

---

[4] There was evidence that excessive braking could have caused the motorcycle to come up on its *front* wheel, damaging the brakes and the front faring. However, there was no evidence as to how doing a wheelie, which involves driving on the *back* wheel, could have damaged the brakes.

motorcycle's ignition and brakes. We reverse that portion of the restitution order.[5]

Supplemental judgment reversed and remanded; remanded for resentencing; otherwise affirmed.

---

[5] Given our disposition, we need not address defendant's alternative argument that the state failed to prove that the victim's repair costs were "reasonable." *See* ORS 31.705(2)(a) (defining "economic damages" to include only "*reasonable* costs incurred for repair or for replacement of damaged property" (emphasis added)).