***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Submitted December 7, 2022, supplemental judgment reversed, remanded for resentencing, otherwise affirmed August 16, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANTHONY R. AZADEH,
*Defendant-Appellant.*

Washington County Circuit Court
20CR68978; A175808

Rebecca D. Guptill, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Peter G. Klym, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Nicholas C. Greenfield, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Supplemental judgment reversed; remanded for resentencing; otherwise affirmed.

**MOONEY, J.**

Defendant was convicted of one count of interfering with a peace officer, ORS 162.247,[1] based upon a negotiated plea in which defendant agreed to pay restitution in an amount to be determined by the trial court.[2] Following a hearing, the court ordered defendant to pay Washington County (the county) restitution in the amount of $2,235.87. Defendant assigns error to the trial court's order, as reflected in the supplemental judgment, that he pay restitution to the county, arguing that the county does not qualify as a victim under the restitution statutes. The state argues first that defendant failed to preserve that argument; however, we conclude that he did. The state then argues that the county qualifies as a victim under ORS 137.103(4)(b) and under ORS 137.103(4)(d). We conclude that the record does not support the conclusion that the county is a "victim" under paragraph (4)(b), and the state has failed to develop an argument that the county is a victim under paragraph (4)(d). We reverse the supplemental judgment as to restitution, remand for resentencing, and otherwise affirm.

We review the trial court's imposition of restitution for legal error. *State v. Lobue*, 304 Or App 13, 16, 466 P3d 83, *rev den*, 367 Or 257 (2020). We are bound by the sentencing court's findings if they are supported by any evidence in the record. *Id.* In assessing the legal sufficiency of the evidence to support a restitution award, we view the evidence in the light most favorable to the state, including reasonable inferences. *State v. Mothershed*, 323 Or App 16, 17, 522 P3d 921 (2022). We state the facts in accordance with that standard.

Sergeant O'Reilly works for the Washington County Sheriff's Office in the patrol division. He was on duty when

_____

[1] ORS 162.247(1) provides, as relevant here, that:

"A person commits the crime of interfering with a peace officer *** if the person, knowing that another person is a peace officer *** intentionally or knowingly acts in a manner that prevents, or attempts to prevent, the peace officer *** from performing the lawful duties of the officer with regards to another person or a criminal investigation."

[2] The trial court is required to order restitution if it "finds from the evidence presented that a victim suffered economic damages," in an amount "that equals the full amount of the victim's economic damages as determined by the court." ORS 137.106(1)(a).

they received a call from defendant's father requesting that an officer come to his home to arrest his son on an active warrant. When O'Reilly arrived to execute the arrest warrant, defendant jumped out of his window and ran. O'Reilly gave chase on foot and ultimately caught and arrested defendant, but he sustained injuries to his hands, arms, face, and knee in that process. O'Reilly sought medical treatment for his injuries and missed four days of work while he recuperated.

The county is self-insured for workers' compensation claims up to $600,000. It contracts with a third party claims administrator, CorVel, for claims processing services within its self-insured retainage. If the county did not contract with a third party administrator to manage its self-insured workers' compensation program, it would pay its own employees to perform those functions.[3] The county pays CorVel an annual fee, set by contract, regardless of claims activity. It pays CorVel an additional set fee for each claim that CorVel opens and processes for the county's employees.

CorVel managed O'Reilly's workers' compensation claim and the county, in turn, paid CorVel the agreed-upon fee of $1,190.25 for those services. CorVel would not have charged that fee, and the county would not have paid it, if O'Reilly had not been injured on the job and filed a workers' compensation claim.

CorVel paid the medical bill from Kaiser for services rendered to O'Reilly in the amount of $318.50, and it also paid O'Reilly's time loss wages in the amount of $727.12. CorVel made those payments on behalf of the county as its claims administrator.

The state requested that the court impose restitution for the medical and time loss payments as well as the

---

[3] The county's risk management representative testified that the county would need to provide claims management services itself in the absence of a third party contract for such services. *See* ORS 656.017(1) (requiring subject employers, like the county, to "perform all duties and pay other obligations required" under the workers' compensation laws by qualifying either as a "carrier-insured employer" or a "self-insured employer"); ORS 656.407 (generally requiring a self-insured employer to establish that it has "an adequate staff qualified to process claims promptly and has the financial ability to make certain the prompt payment of all compensation and other payments that may become due to the director under this chapter").

claims processing fee that the county incurred, in the total amount of $2,235.87.

Defendant objected to the requested restitution award, arguing that his criminal conduct did not cause the losses:

"So, we are objecting to the imposition of restitution today. We have several bases for that. And just as an overview, we're objecting to the imposition generally on a basis that the—I think, as the evidence you saw today shows that the causation part is too attenuated.

"And then also, specifically, we're objecting to the imposition [of] the three requested restitution amounts based on the three exhibits that you saw.

"* * * * *

"[T]he county is a self-insured entity. They pay a third-party administrator to administ[er] these claims. That is the cost of being self-insured.

"That is not under what I believe is [ORS] 137.103, which is the statute defining—or providing definitions for restitution.

"And, specifically, under 137.103(4)(d), which allows an insurance carrier, if it has expended money on behalf of a victim, to be reimbursed in restitution. This wasn't expended on behalf of a victim. This was expended pursuant to a contract that the county has * * *. This is the cost of doing insurance business."

The trial court disagreed and included the amounts requested in the restitution award.

The state asserts that defendant did not adequately preserve his argument that the county does not qualify as a victim under ORS 137.103(4)(b) or (4)(d) because his argument was not specific enough to alert the trial court to his contention. Preservation ensures that the trial court has a "chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made[.]" *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). It "ensures fairness to opposing parties" by avoiding surprise, *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011), and it "fosters full development of the record, which

aids the trial court in making a decision and the appellate court in reviewing it." *Peeples*, 345 Or at 219-20. Although raising an issue at trial is ordinarily essential to its preservation for appeal, identifying a specific source of authority for the issue is less critical, and making a particular argument is even less significant than citing a specific authority. *State v. Fox*, 370 Or 456, 461, 521 P3d 151 (2022).

Defendant's argument was sufficiently specific to serve the principles of preservation. He argued that the causal link between defendant's criminal activity and the county's claimed economic damages is too attenuated, which goes directly to the question of whether the county qualifies as a victim under ORS 137.103(4)(b). He also made a specific reference to ORS 137.103(4)(d) and the county's role as a self-insured employer, which goes to the question of whether the county qualifies as a victim under ORS 137.103(4)(d). We need not slice the "preservation onion" too thinly to conclude that defendant preserved his argument here. *See State v. Amaya*, 336 Or 616, 629, 89 P3d 1163 (2004) (explaining that "problems *** may arise if the preservation onion is sliced too thinly").

We turn to the merits. A sentencing court is required to order restitution if it "finds from the evidence presented that a victim suffered economic damages," in an amount "that equals the full amount of the victim's economic damages as determined by the court." ORS 137.106(1)(a). But restitution is intended to be "penal, not compensatory. Thus, restitution must be understood as an aspect of criminal law, not as a quasi-civil recovery device." *State v. Dillon*, 292 Or 172, 180, 637 P2d 602 (1981).

To request restitution, the state must first identify the victim in whose behalf it seeks restitution. We begin with the definition of "victim" in ORS 137.103(4). The relevant paragraphs here are (a), (b), and (d):

"'Victim' means:

"(a)   The person *** against whom the defendant committed the criminal offense, if the court determines that the person *** has suffered or did suffer economic damages as a result of the offense.

"(b)  Any person * * * whom the court determines has suffered economic damages as a result of the defendant's criminal activities.

"* * * * *

"(d)  An insurance carrier, if it has expended moneys on behalf of a victim described in paragraph (a) of this subsection."

ORS 137.103(4).

Paragraph (a) refers to the "direct victim of a crime." *State v. Zuniga*, 288 Or App 742, 750, 407 P3d 961 (2017). There is no dispute that O'Reilly was the direct victim of defendant's crime, and that the county was not. Thus, the question under paragraph (b) is whether the county, as an entity not described in subsection (a), suffered economic damages as a result of the defendant's criminal activities. The questions under paragraph (d) are whether the county is "an insurance company" and, if it is, whether it "expended moneys" on behalf of O'Reilly.

Restitution requires proof of "(1) criminal activities, (2) economic damages, and (3) a causal relationship between the two." *State v. Smith*, 291 Or App 785, 788, 420 P3d 644 (2018); *see* ORS 137.106(1)(a) (district attorney to present "evidence of the nature and amount of" economic damages to court). "The plain import of ORS 137.106 is that, when a person is convicted of a crime, the trial court may impose restitution for damages recoverable in a civil action arising out of the facts or events constituting that crime or any other criminal conduct admitted by the defendant." *State v. Howett*, 184 Or App 352, 356, 56 P3d 459 (2002). Simply put, restitution is "a process to allow a victim to ask the criminal court to award the damages that the victim would be able to obtain in a civil action." *State v. Ramos*, 358 Or 581, 590, 368 P3d 446 (2016).

The type of damages allowable as restitution are "economic damages" as defined in ORS 31.705, with an express exception for "future impairment of earning capacity." ORS 137.103(2)(a). ORS 31.705(2)(a) defines economic damages as:

"objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

The Supreme Court recently held that "that the legislature did not intend to permit courts to award, as 'economic damages,' the attorney fees that a victim chooses to incur in a criminal case to protect their interest in obtaining an award of restitution." *Fox*, 370 Or at 469. In doing so, it acknowledged that "neither ORS 137.106(1) nor the definition of economic damages in ORS 31.710(2)(a) requires that damages awarded in restitution be limited to what would be recoverable in a civil action," but it noted that "the legislative history and evolution of the restitution statutes indicate that the legislature did not intend to differentiate between the 'economic damages' that a victim could recover as damages in a civil action and those that the victim could recover as restitution." *Id.* at 466. We understand that discussion to reflect the court's continued view that the "civil law concepts" incorporated into the restitution process serve as a "circumscription of the authority of the court" to determine restitution. *Dillon*, 292 Or at 180.

We turn to the facts of this case and, as we will explain, conclude that the county does not qualify as a victim under ORS 137.103(4)(b).

The $1,190.20 "Workers' Comp Fee" was an administrative charge incurred by the county as a contractually negotiated fee with its third party administrator for managing O'Reilly's injury claims in particular. The state argues that the fee was triggered as a direct result of the injuries caused by defendant's criminal conduct, and the record supports that argument. Given that the fee would not have been incurred but for the injuries O'Reilly sustained as a result of defendant's criminal conduct, the question is whether the

county would be able to recover that claims processing fee in a civil action against defendant. The county incurred the fee in order to carry out its statutory obligation to provide workers' compensation benefits for its employees. It was not a payment made to O'Reilly, and it did not make that expenditure on his behalf. O'Reilly would have no right to claim such a fee in a civil suit against defendant and the county would, likewise, have no right to pursue such a fee on O'Reilly's behalf. The state offers no theory of liability for the county to recover that fee in its own behalf, and we are hard-pressed, on this record, to think of one.

The testimony offered by the state concerning the $727.12 in "lost wages" was simply that the $727.12 was paid to O'Reilly for his four-day time loss. Defendant argues that the county does not qualify as a "victim" with respect to that payment because it would have been responsible for paying O'Reilly's wages in the absence of defendant's conduct anyway. It is true that the county would have paid O'Reilly's wages whether or not he was injured. And we have generally held that "the regular salaries of law enforcement officers involved in an investigation" cannot be included in restitution awards "principally because they are incurred irrespective of specific violations of law." *State v. Heston*, 74 Or App 631, 634, 704 P2d 541 (1985).

But as we understand the state's position, it contends that the county would not also have lost O'Reilly's services and that that loss of services represents a loss to the county separate from the wages it paid O'Reilly while he was recuperating. It will either replace those services or not. But in either case, the state argues that there is the loss of value, either in the additional expense to replace those services or in the reduced capacity to provide services if not replaced. We return to the question whether the county would be able to recover such a loss in a civil action against defendant. The state offers no theory of civil liability for this claim either. That the county incurred expenses related to O'Reilly's injuries is not enough, without more, to support an award of restitution against defendant. The state must establish that the county could recover that loss from the defendant in a civil cause of action, but the record reflects that it did not do so.

The testimony concerning the $318.50 paid for O'Reilly's medical bill was that CorVel paid the bill for services rendered to O'Reilly, on behalf of the county. The state sought restitution on behalf of the county for that payment arguing that "a self-insured employer has a civil cause of action against a third person responsible for injuring their employee." In support of that argument, the state relies upon ORS 656.591(1)[4] and *State v. Divers*, 51 Or App 351, 625 P2d 681 (1981). But *Divers* is not as broad as the state argues. We concluded there that if the injured worker assigned his cause of action to his employer by electing not to file an action against the wrongdoer, "there would be no problem with ordering restitution to be made to an insurance company which in all other respects was a victim of the defendant's criminal activities." *Divers*, 51 Or App at 355. There is nothing in the record to show that O'Reilly made such an election.

*Dillon* is instructive on that point. *Dillon* concerned payments made by the Adult and Family Services Division of the Department of Human Resources (AFS) for emergency medical treatment services provided to the defendant for injuries he sustained while engaged in the criminal conduct for which he was convicted. 292 Or at 174. AFS was required to provide those services to defendant as a "medically needy" person. *Id.* at 183. Because the record did not disclose "facts giving rise to a theory of civil liability under which AFS could recover defendant's medical expenses from him[,]" the sentencing court could not have concluded that AFS was a victim for purposes of imposing restitution. *Id.* at 182-83. Here, the county was required to pay for O'Reilly's job-related medical expenses. Any right it has to seek reimbursement from defendant requires O'Reilly's election not to sue defendant in his own behalf and, as already explained, the record does not show that such an election was made.

_____

[4] ORS 656.591(1) provides that:

"An election made pursuant to ORS 656.578 not to proceed against an employer or third person operates as an assignment to the paying agency of the cause of action, if any, of a worker or the beneficiaries or legal representative of a deceased worker against the employer or third person, and the paying agency may bring action against the employer or third person in the name of the worker or other beneficiaries."

Given that, on this record, the county would not be able to recover the claimed restitution amounts from defendant in a civil case, it does not qualify as a victim under ORS 137.103(4)(b).

In its final argument, the state asserts that the county "plausibly qualifies" as a victim under ORS 137.103(4)(d) because it "plausibly qualifies" as an "insurance carrier" that has "expended moneys on behalf of a victim." But the state does not develop that argument, and we decline to do so for it. *See R. S. R. v. Dept. of Human Services*, 319 Or App 149, 161-62, 510 P3d 209 (2022).

The trial court was not authorized to impose the restitution that it did on this record. We, therefore, reverse the supplemental judgment as to restitution and remand for resentencing. *See State v. Moreno-Hernandez*, 365 Or 175, 190-91, 442 P3d 1092 (2019) (explaining that the appropriate disposition is to remand to the trial court for resentencing where the trial court committed legal error in sentencing a defendant to pay a "compensatory fine" to a victim of the crime, when there might be other permissible options for the trial court to adopt on resentencing); *State v. Travers*, 314 Or App 487, 489, 497 P3d 812 (2021) (reversing supplemental judgment and remanding for resentencing where trial court erred in including medical expenses in the restitution order, but did not err in including certain other expenses in the restitution order).

Supplemental judgment reversed; remanded for resentencing; otherwise affirmed.